In the Matter of the Application and Petition of the BOARD OF WATER SUPPLY OF THE CITY OF NEW YORK, Pursuant to Section 42, Chapter 724 of the Laws of 1905, as Amended by Section 9, Chapter 314 of the Laws of 1906.

MARTIN CANTINE COMPANY and BYRON L. DAVIS, as Trustee under the Last Will and Testament of JOSEPH B. SHEFFIELD, Deceased, Appellants; THE CITY OF NEW YORK, Respondent.

Third Department, September 10, 1919.

**Eminent domain — condemnation of lands for water supply, city of New York — award vacated — failure to show damage — burden of proof.**

An award made on the condemnation of lands for the water supply of the city of New York is properly vacated and a new trial before new commissioners ordered, where the alleged damage is caused by the diversion of a stream of water at the Ashokan dam, and there is no proof whatever that the business or the property of the claimants has suffered any annoyance by reason of said diversion which has existed for some time, and on the contrary it appears that the gross returns of the claimant's business have increased since said diversion, and that there has been no depreciation in the rental value or evidence that the lessee has suffered thereby. An award made on such evidence is too conjectural and remote and is against the weight of evidence.

However, claimants in such proceedings are entitled to recover such an amount as will fully indemnify them as to all proximate and consequential damages resulting from the acts of the city.

If the failure to show any practical losses in the operation of the claimants' properties because of the diversion of the water by the city is susceptible of explanation, the burden of making the same rests upon them.

Commissioners in making an award should exercise their judgment in the light of all the testimony, expert or otherwise, which may be produced, weighing that evidence, however, and disregarding that which is conjectural or fanciful.

SEPARATE APPEALS by Martin Cantine Company and by Byron L. Davis, as trustee, from so much of an order of the Supreme Court, made at the Rensselaer Special Term and entered in the office of the clerk of the county of Ulster on the 29th day of October, 1918, as vacated awards made to the appellants by commissioners in condemnation proceedings and directed a new trial before new commissioners, and granted other relief.

*Severyn B. Sharpe* [*Howard Chipp* of counsel], for the appellants.

*William P. Burr, Corporation Counsel* [*William H. Black* and *William H. Grogan,* special counsel], for the respondent.

PER CURIAM:

A careful consideration of the record leads to the conclusion that the order should be affirmed. In reaching this determination we do not indorse all that was said by the court at Special Term. Evidence as to the cost of steam substitution for water power and of maintaining the same is necessarily to a certain extent technical and scientific and must be given by expert witnesses. And generally the question of value is a matter of opinion sometimes, and preferably, when possible, fortified by facts giving strength to the opinion. Undoubtedly too much time and energy were devoted at the trial to that class of witnesses. This record of 1,000 pages consists largely of abstruse discussions which mean little to an unscientific man. The result is confusing and unsatisfactory. It is the duty of the commissioners, however, with discrimination and judgment to ascertain the facts. In the recent case of *Matter of Leroy Street (Binghamton)* (188 App. Div. 58), where the effect of a street opening on adjacent property was under consideration, we said: " A witness in estimating value may properly take into consideration such consequences to the remaining land as will naturally and with reasonable certainty follow from the construction of the proposed street. Such consequences naturally affect differently the judgments of different witnesses. Hence to a certain extent arise their varying estimates of value. To one that may seem important which to another seems trivial. The statute requires the commissioners to view the property. They also should in so doing and in reaching a conclusion take into consideration the probable consequences of the street as affecting the remaining property. Commissioners of appraisal are selected because of their discrimination and intelligence and will appraise the various elements entering into the question of damages at their true value." Perhaps the estimates of the various witnesses in this case present no greater discrepancy considering the value of the property than the estimates of witnesses as to the value of a horse in an insignificant Justice's

Court lawsuit. In all such cases it is the duty of the triers of fact to settle such differences and fix the value. If the only difficulty here were the varying estimates of expert witnesses on the question of damages and the fact that their testimony had been unnecessarily and uselessly prolonged we would have no difficulty in sustaining the awards. The difficulty we encounter is of a different nature. The property of the claimants is thirty miles below the Ashokan dam. Between that dam and Barclay's dam where the claimants' property is located there is a drainage area of 175 square miles. The appropriation by the city contemplates a total diversion of the stream at the Ashokan dam. Such total diversion had taken place at the time the commissioners made their report as they have specifically found. They say that on September 9, 1913, the opening in the dam through which the stream had flowed was permanently closed and the waters of the stream were impounded in the reservoir behind the dam and that " practically all the waters of the Esopus Creek at such masonry dam, except those which passed through by seepage and by unavoidable leakage are being diverted to said city of New York " (See, also, *Matter of Van Etten* v. *City of New York*, 226 N. Y. 483), and also that, " about three-fifths of the total flow of said Esopus Creek at said Barclay's dam will be diverted therefrom by reason of the acts of the city of New York." It would seem, therefore, that the effects of this diversion on the properties concerned should have been manifested in some actual and practical manner and should not be left entirely to the opinions of experts. It is not a matter of theory or conjecture. It is a matter of actual experience. It may be that the total diversion had been intermittent so as not to constitute a complete test at the time the commissioners made their report. It appears however, that in the year 1914 there were 189 days, in the year 1915, 230 days, and in the year 1916, 337 days when no water passed through the channel at the Ashokan dam. We have searched the record in vain for any evidence that the business conducted on the property of these claimants suffered any annoyance, inconvenience or interruption by reason of this diversion. The Cantine Company has grown from comparatively small beginnings to a large and prosperous concern. In 1893 the gross value of its product per annum was about $175,000. It

gradually and steadily increased until in 1916 the gross value of its product was about $3,000,000 per annum.  It began with steam power and it has from time to time enlarged its steam equipment with the expansion of its plant and growth of its business.  Its present steam power equipment is equivalent to 1,500 or 1,800 horse power and its water power equipment is equivalent to 500 horse power.  The value of its real estate and machinery exclusive of water power is $550,000.  This large business has gone along without loss or interference by reason of the diverted water so far as this record discloses. The property of Davis, as trustee, prior to 1909 was leased for $7,000; from 1909 to 1915 for $8,000, and from 1915 to 1918 for $8,500.  There has been no depreciation in the rent because of the diversion nor is there any evidence that the lessee has suffered thereby.  It is true that an undeveloped or unutilized water power may in some cases have value.  Are we to assume that the awards in this case of $165,000 to the Cantine Company and $25,000 to Davis as trustee represent only the value of unutilized power?  If so they rest on a basis too conjectural and remote to be substantial and are against the weight of evidence.  The claimants are entitled to recover such a sum as will fully indemnify them as to all proximate and consequential damages resulting from the acts of the city.  (*South Buffalo Railway Company* v. *Kirkover,* 176 N. Y. 301; *County of Erie* v. *Fridenberg,* 221 id. 389; *Matter of Leroy Street* [*Binghamton*], *supra.*)  But there is nothing in the evidence to indicate any probability that these claimants would have realized anything from this water power except in connection with the business now being conducted on their respective properties.  And in respect to the Cantine property its counsel in their brief substantially disclaim any " element of speculative value upon undeveloped power or assumed future conditions."  It may be of course that the failure to show any practical results in the operation of the properties because of the diversion by the city is susceptible of explanation.  Whatever the explanation the burden of making it rests on the claimants.  On the new hearing the effect of the diversion by the city on the properties of the claimants will have had more ample opportunity by reason of the intervening time to make itself manifest.  Possibly there are various

elements of damages. One possible element of damage is to the dam. All these features of the case should receive careful consideration by the commissioners. The assessment of damages is largely a question of good judgment. In the last analysis the judgment of the commissioners must control. They should exercise that judgment in the light of all the testimony, expert or otherwise, which may be produced, weighing that evidence, however, and disregarding that which is conjectural or fanciful.

The order, so far as appealed from, should be affirmed, with costs.

Order, so far as appealed from, unanimously affirmed, with costs.