HAZARD LEWIS FARMS, INC., Respondent, v. STATE OF NEW YORK, Appellant. (Claim No. 32442.) — Appeal by the State of New York from a judgment of the Court of Claims awarding the respondent the sum of $453,754.50, and interest thereon, for the appropriation of 216.757 acres of land for the purposes of Harpur College, an institution under the jurisdiction of the State University. The land taken is in the town of Vestal, Broome County, and is situated about a mile west of the city of Binghamton on the south side of the Vestal Parkway, which is a part of a State highway known as Route 17. The parkway is a modern four-lane highway with a mall in the center, running a distance of about 5.2 miles from the city of Binghamton west to the hamlet of Vestal. The property taken is rectangular in shape with a frontage on the parkway of 2,057.72 feet, a rear line of 1,999.67 feet, a depth of 4,495.65 feet on the east line and a depth of 4,741.87 feet on the west line. Since 2.8 acres are in the highway easement the actual net taking is about 214 acres. On the date of the appropriation the land taken and the adjacent properties on both sides of it along the parkway were zoned for commercial purposes, in the case of the appropriated site for a depth of 200 feet. Beyond this commercial zone the land to the rear on the site taken was zoned for residential purposes to a depth of 500 feet on the east side and 800 feet on the west side. The remainder of the property was not restricted. The State claims that the award is grossly excessive and based upon an erroneous method of evaluation. This argument appears to be based chiefly upon the fact that the appropriated parcel was unimproved land at the time of the taking, and had never been subdivided into building lots for either residential or commercial purposes in accordance with a map filed in the County Clerk's office. Testimony as to its value on a lots basis was erroneous, so the State argues,

and that nevertheless such testimony was received and considered by the trial court. The record does not indicate in our opinion that the trial court improperly received and considered incompetent evidence on the issue of value under the circumstances disclosed. Apparently the experts on both sides agreed that the most valuable use to which the property could be put was for commercial and residential development. Considering its location this was self evident. It was adjacent and accessible to the Triple Cities — Binghamton, Endicott and Johnson City. In the center of a fast developing industrial and residential area, it is clear that such a sizeable tract had a high potential value for both residential and commercial purposes. And to this may be added the fact that other tracts of such a size and location were not readily available. In such a situation a distinction between raw acreage and a subdivision value should not be too tightly drawn. The end rule in every condemnation proceeding is that an owner is entitled to receive the fair market value of property taken from him based on the most advantageous use to which it can be put (*Sparkill Realty Corp.* v. *State of New York,* 254 App. Div. 78, affd. 279 N. Y. 656; *Matter of City of New York [Inwood Hill Park],* 230 App. Div. 41, affd. 246 N. Y. 556). All other rules that tend to prevent an inflationary build-up of value where no apparent potential exists must be considered as subordinate to this end rule, and to be applied only in an appropriate situation. Every claim must necessarily be determined upon its own peculiar facts, but since the condemnor has the advantage of striking when it chooses it would be obviously unfair to deprive an owner of any element of potential value simply because he has failed to file a map. But in any event the experts for the claimant in this case gave their opinions as to value on an acreage basis. True they took into consideration the potential commercial and residential nature of the property and its nearness to the employment and social centers of the Triple Cities, but the record indicates that their primary testimony as to value was not arrived at on a lot basis. They later referred to a subdivision map, which had been received in evidence without objection, merely to confirm their previous primary testimony. We see nothing improper or erroneous in this procedure. The trial court was confronted with a wide variation between the values given by the experts for the respondent and those who testified for the State. The top figure for the State was $252,550 as expressed by one of its experts, and the low figure for the respondent was $930,500 as testified to by one of the respondent's experts. Neither figure was adopted by the trial court in its decision. Instead it was found that the land appropriated, without allocation as to potential residential and commercial uses, was worth $453,754.50 at the time of taking. The trial court viewed the premises and of course it was not bound by the opinions of experts and had the right to arrive at an independent valuation based on its view of the property and all of the evidence taken concerning its value. The fact that the trial court's decision is not substantiated by precise figures from experts is not sufficient to justify a reversal. The same situation is presented in nearly every condemnation proceeding. It is a rare condemnation proceeding indeed where the experts are not widely apart in their testimony as to value and the trier of the facts is usually compelled to adopt a figure of his own based upon a reasonable analysis of the problem presented. Judgment unanimously affirmed, with costs. Present — Foster, P. J., Bergan, Halpern, Zeller and Gibson, JJ.