Morris Eder, J.
This is a proceeding to acquire property located within the block bounded by East 56th Street and Second *404 Avenue, East 57th Street and Third Avenue, borough of Manhattan, city of New York, which real property was selected as a site for the School of Industrial Arts and recreational purposes.
The buildings involved in this proceeding differ from each other in design, arrangements, improvements, nature of construction and adaptability. Such differences contribute in varying degree to the enhancement of the valuation of the land. The court considers these elements in making the respective awards.
The court has made the statutory view and fixes the awards as follows:

Damage Parcel Land Improvements Total

1 $40,116 $10,000 $50,116
2 & 3 88,352 20,000 108,352
4 40,116 10,000 50,116
5* 176,739 364,000 540,739
6 40,116 46,000 86,116
7 72,45 19,000 91,450
8 53,130 17,000 70,130
9 48,300 11,000 59,300
10 49,011 25,500 74,511
11 154,000 172,000 326,000
12 307,697 50,000 357,697
13 City of New York $1.
The following awards are made for fixtures:

Damage Parcel Amount

1 Herbert H. Friedlander $325
7 Victor Henschel, Inc. 1,300
9 Nathan and Solomonwitz d/b/a S. Solomonwitz Son 2,225
10 Decorators Show Boom Co. 850
11 Lenore Kroll, Inc. 1,200
11 Maud O’Connor Alriq d/b/a Maud Chezeelle 30,000
12 Tie Grafters, Inc. 950
12 Bestaurant Associates, Inc. 6,000
12 Bose Mildwoff 425
12 Paul & Gertrude Gottlieb d/b/a Ritz Plaza Tailors 1,060
12 Daniel Silver d/b/a Daniels Jewelry Shop 1,275
12 Minnie Miller d/b/a Sutton Card & Play Shop 250
12 Hamilton Dwight Co., Inc. 800
*405 The city contends that all the testimony, whether given by claimant’s expert or even its own, as to values in excess of structural value must be disregarded, citing People ex rel. Manhattan Square Beresford v. Sexton (284 N. Y. 145); People ex rel. Parklin Operating Corp. v. Miller (287 N. Y. 126); and People ex rel. Hotel Paramount Corp. v. Chambers (298 N. Y. 372). It was there held that the maximum value which ordinarily may be placed on an improvement upon real estate for tax purposes is its reconstruction cost less depreciation, even if its income if capitalized would indicate a higher valuation.
In the Parklin case (supra) it was pointed out that evidence of cost of reconstruction, even though not contradicted, may be rejected by the trier of the facts, where there is reasonable ground to question its reliability; that “ [w]here capitalization of potential or actual income indicates a value much greater than the claimed cost of reproduction, a court would at times be justified in rejecting the evidence of such cost of reproduction ” (supra, pp. 130-131). Where the city’s own expert has placed its “ economic” value, which can only mean its exchange or market value, in excess of $100,000 over his appraisal of its structural value, it is manifest that the latter is not a reliable figure. It would not therefore constitute, even for tax purposes, a maximum limit of valuation. The city’s contention thus appears to be without factual support and may be rejected on that ground.
However, I prefer to place my decision on a broader ground, and that is, that this maximum-limit principle established in tax certiorari proceedings is not controlling in condemnation proceedings.
In both, to be sure, it is the value.of the property — land and improvements — which must be fixed. Value, however, “is-a *406 word of many meanings ” (Brandeis, J., in Southwestern Tel. Co. v. Public Service Comm., 262 U. S. 276, 310), and the particular method deemed most appropriate and expedient for its ascertainment may vary according to the purposes for which valuation is sought. Where property is taken by eminent domain, the constitutional mandate of ‘ ‘ just compensation ’ ’ must be carried out; and a judicial award must be made in each individual case to indemnify the owner for the loss of his property. The search for a value which will constitute a proper balance between the public’s need and a particular owner’s loss is the function of the condemnation court. Valuation for tax purposes, however, simply is a measure by which the cost of government may be fairly apportioned. Equality of assessment is the paramount consideration in tax proceedings. The courts are generally concerned only with the question of correcting the inequality in the matter sub judice, and do not, for obvious reasons, attempt any readjustment of entire assessment rolls. In People ex rel. Hagy v. Lewis (280 N. Y. 184, 188) the court, per Loughran, J., described the goal in tax assessment as that “ rough equality which is all that has heretofore been possible under any system of taxation ’’. And in Matter of City of New York (Blackwell’s Is. Bridge, 198 N. Y. 84, 88) the court took note of the fact that, “ [i]n valuing real estate for purposes of taxation the state resorts to the cost of improvements ” for the purpose of ascertaining their value. This tangible standard of structural value, being presumably the basis of assessments, may then be equitably regarded as the upper limit for tax valuations of all property in the State, thus preserving the fundamental principle of equal taxation. A realistic comparison of the different purposes for which valuations are made for tax assessments and condemnation awards impels the conclusion that the standards fixed in the former may not be arbitrarily applied in the latter (Bergen County Sewer Auth. v. Borough of Little Ferry, 15 N. J. Super. 43).
No sound reason exists to limit in any way the consideration of all elements in the valuation process deemed relevant to the ascertainment of “just compensation ” to an owner deprived of his property. The concept of ‘‘ just compensation ’’ cannot be reduced to a formula (United States v. Cors, 337 U. S. 325), nor is it possible to have ‘‘ inexorable rules ’’ for the determination of value thereunder (United States v. Toronto Nav. Co., 338 U. S. 396, 402). But it may be stated as a broad proposition that the court endeavors to make an informed estimate as to the price which the property would bring in the market when offered for sale by a willing but not anxious seller to a buyer *407 similarly circumstanced (Kimball Laundry Co. v. United States, 338 U. S. 1, 6). Accordingly, it is competent to show in condemnation “ any fact which the owner would naturally and properly bring to the attention of a buyer with whom he was negotiating a sale (Matter of City of Rochester [Smith St. Bridge], 234 App. Div. 583, 586.) “ In determining the value of land appropriated for a public purpose, the same considerations are to be regarded as in a sale of property between private parties. * * * as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future ” (Boom Co. v. Patterson, 98 U. S. 403, 407-408).
If there is a definite market shown by frequent sales of similar property, such market value is the value to be fixed. But where the property — as is often the case — is not susceptible to the doctrine of market value, recourse must be had to other means of ascertaining value. The ultimate question is what is ‘ ‘ the value of the land as enhanced by the value of the structures ” upon it (Matter of City of New York, [Blackwell’s Is. Bridge], 198 N. Y. 84, 87, supra). The method to be pursued may vary according to the type of property involved. The last-cited case, merely established the proposition that where the building was suitable to the land, evidence of structural value was competent, though admittedly not conclusive, as bearing upon the question of its market value. Such evidence had, as a matter of fact, been formerly rejected as irrelevant.
Those who would endeavor to extend this principle so as to limit “ value ” to the original cost of construction or the current cost of reconstruction less depreciation are adopting an economic theory which derives from Adam Smith’s classic doctrine that the value of an article equals the cost of its production. The modern appraiser has learned that the law of supply and demand will furnish a more correct index of value and that ‘‘ market value ’’, the standard in condemnation, is determined not so much by cost as by the relative desirability, abundance and utility of the particular property in the community. The Supreme Court criticized the cost theory in the following words: “ Original cost is well termed the ‘ false standard of the past ’ where, as here, present market value in no way reflects that cost. So with reproduction cost, when no one would think of reproducing the property.” (United States v. Toronto Nav. Co., 338 U. S. 396, 403, supra.) The court had earlier stated that value, not replacement cost, which might be greater or less than *408 value, was the criterion for just compensation (Brooks-Scanlon Corp. v. United States, 265 U. S. 106, 123, 125).
We thus arrive at the capitalization of income method. It is obvious, of course, that the prime factor in the mind of the buyer who invests in real property is the realizable income therefrom. This is truly the product of the interplay of the forces of supply and demand. It is necessary, of course, to keep in mind that it is property which is being valued and not the business conducted thereon, and hence goodwill or elements of income influenced by management or method of operation must be eliminated in determining the basic income attributable to the property as such or its rental value. This concept of valuation is based on the idea that the net income derivable from a use of the property to which it is best adapted, when capitalized at the prevailing local rate of investment return, will produce a sum which is the practical equivalent of its true value. (We should at this point take note of the fact that where property is ‘‘ special ’’ in nature in the sense that it does not have a free market value and may not even be income-producing, such as a church or clubhouse, then the court is perforce obliged to accept the summation of the value of the land and the replacement value of the improvements).
In general, however, “ [r]ental value tends to prove fee value, because other things being equal, the income from property is a measure of its market value ” (Ettlinger v. Weil, 184 N. Y. 179, 183). Since rental value is affected by the use which may be made of the property and the type of building erected thereon, “ it-is proper to show, as bearing on the value of the property, that it is peculiarly adapted for any particular business ” so that the owner may “ receive its greatest value for any-available use to which it may be put ” (Matter of City of Rochester [Smith St. Bridge], 234 App. Div. 583, 586, 587). Accordingly it was competent ‘‘ to prove all the uses that could be made of the property; the value of the plant as a live, going flour mill, the increased value, if any, which the structures -so used had given to the land, and all the valuable appurtenances and availabilities of the property * * * These are things which a seller and a purchaser would consider on a sale ” (Banner Milling Co. v. State of New York, 240 N. Y. 533, 543). The claimant was there held entitled to compensation not merely for so much brick, lumber, etc., considered separately, but as synchronized into an efficient functioning unit of property which had enhanced the value of the land beyond the mere cost- of-the improvement. This view has been followed in the recent *409 cases decided in this as well as other States, the rule being stated in Housing Auth. of City of Bridgeport v. Lustig (139 Conn. 73, 76-77) as follows: “ Accordingly, the better reasoned cases hold that, although the value of a business which is being conducted upon the real property condemned may not ordinarily be added to the market value of the realty as damages for the taking, the fact that a given business is in operation on the property should be taken into consideration in determining the market value of the real property if in truth it is a factor in establishing that market value — if, that is, the use of the real property for that purpose enhances the value of it.” (See, also, City of Trenton v. Lenzner, 29 N. J. Super. 514.)
It seems obvious that the natural result of such a method of valuation is one integrated figure for the value of the entire property based on use and derived from the synthesis of land and building. That was the procedure approved in Sparkill Realty Corp. v. State of New York (254 App. Div. 78, 82, affd. 279 N. Y. 656) where the claimant was held “ entitled to recover the value of the structures and also the value of the land enhanced by the improvements ”, consisting of a stone quarry plant serving the increasing market of the metropolitan district. The appellant, State of New York, urged that the land and the improvements should have been separately valued and separate findings made, contending also that the value of the property could not exceed the sum of the value of the land as" a naked site and the value of the improvements. The court held that no form of proof or findings was obligatory and that the integrated end-result chosen might be the best manner of stating the true value of this property.
The summation form has been adopted in almost all instances and no injustice is created thereby, however artificial its use when reliance is placed on the capitalization of income method, provided, of course, due allowance is made to arrive at a just total.
The values fixed by me for this property represent my'view of the proper income base and rate of capitalization to be used. Their allocation between land and building is not particularly significant so long as their sum meets the standard of ‘‘ just compensation ”. The constitutional mandate requires the court to disregard in a condemnation proceeding the artificial barrier of a maximum limit of reconstruction cost less depreciation. Were I to heed the city’s admonition and limit my building value to such cost, the net result would still be the same, since I would then be obliged to provide an appropriate increase in the value *410 presently stated for the land as enhanced by the building, thus making the sum the same as the present total (Sparkill Realty Corp. v. State of New York, supra). The resultant award would not be affected in any event.
Let the corporation counsel prepare and submit a tentative decree accordingly.

 With regard to damage parcel 5 the city has posed a valua *405 tion problem which calls for some elaboration of the basis of determination. The parcel is occupied by a four-story public garage with additional facilities for roof parking. The city’s expert set the land value at $154,000 and the structural sound value of the building, i.e., the cost of reconstruction less depreciation, at $228,907, or a total of $382,907. Claimant’s expert, using the method of capitalization of rental value or income, arrived at a land value of $241,008 and a building value of $408,992, or a total of $650,000. On rebuttal the city’s expert testified that on an “ economic basis ”, using the capitalization of income method, his appraisal value for the building would be increased to $336,000, while the land value would remain unchanged.