Per Curiam.

The award of $39,775,208 to claimant for condemnation in 1963 and 1964 by the City of New York of unimproved land in the Breezy Point section of Rockaway peninsula was over seven times the amount the same land in the substantially same condition of improvement had cost claimant three years before in 1960.
The court at Special Term expressly based its award both on “capitalization of estimated income” in projects which claimant proposed to develop but which had not been started or contracted for in the land under consideration on this appeal; and also on “ comparable sales ”.
Since the award was stated in two lump sums, reflecting two physical divisions of the property but not otherwise broken down, it is not possible in reviewing the record to determine to what extent the award was attributed to capitalization of income for projected future development and what extent to sales of comparable properties. But neither theory as developed on the trial will support the award and there must be a new trial.
*470 Although a small portion of claimant’s extensive projected plans for the development of its property had been set in motion and construction had begun when condemnation commenced, the city by agreement has paid claimant $5.6 million for the construction costs and agreed to pay it for the 21-acre site of construction on the basis of the aerefige award that will be made in this proceeding. This 21-aere section and its improvements were excluded from the condemnation.
The land actually condemned, approximately 122 acres of the “ Twin Parks” site tiild 209 acres of the “tip” site at the end of the peninsula, was Unimproved. Plans in considerable detail for a residential apartment development of the ‘1 Twin Parks ” area had been projected, but no part Of the work had been contrasted for or started. The proposed development of the ‘ ‘ tip ’ ’ Was a plan without detail and this part of the property, low-lying and exposed to strong tidal and wind action, Would have required extensive fill to be usable for any residential development. Full utilization of the “ Twin Parks ” area, as projected, depended in turn on acquisition of additional land from the city under Jamaica Bay and its being filled to usable levels.
The record thus was not in condition to find damages based on “capitalization of estimated income” on these projected future developments. Elaborate forecasts of income from nonexistent structures on land which needed large physical change to be usable for the purpose is not a proper measure of fair market value.
This reflects a settled principle reiterated in Arlen of Nanuet v. State of New York (26 N Y 2d 346) where the question posed was 1 ‘ whether it is permissible to fix the market value of land, completely bare when condemned, solely on the basis of capitalization of income expected to be realized from buildings and other extensive improvements not yet financed, on which no work had even been begun on the day of taking ” (p. 351). That question was answered in the negative.
It was noted that “ No shopping center was appropriated by the State. The vacant lot which it took was not a shopping center and, certainly, the agreements among financially responsible people about what they planned to do in the future with that lot did not transform it into one ” (pp. 355-356).
*471 On the capitalization of income based on future projections of unstarted plans, Nanuet is indistinguishable from the present case. The court in Nanuet on analysis of Levin v. State of New York (13 N Y 2d 87) found Levin was consistent with the rule laid down in Nanuet (26 N Y 2d, at pp. 352-353; see, also, City of New York [Shorefront High School — Rudnick], 25 N Y 2d 146,149; Triple Cities Shopping Center v. State of New York, 26 A D 2d 744, affd. 22 N Y 2d 683).
Nor does the proof of sales of comparable parcels meet the need in this case to support the award of $39 million by competent and sufficient evidence. The parcels used for comparison were so different from the land in issue as to throw no helpful light on the fair market value of the land condemned.
The land in issue was not only vastly larger than the land to which it was compared, and markedly different in adjacent development, but its physical location on the Rockaway peninsula differed radically.
Indeed the only directly comparable property suggested by the record was the sale of 415 acres of contiguous land by claimant’s predecessor, controlled by the same interests which control claimant, in 1960 for $11.9 million. This land and the acreage involved in this proceeding was purchased in 1960, for a total of $17.5 million for 785 acres. The net cost to the claimant of the remaining land now condemned, therefore, was about $5.5 million.
The evidence of comparables is tainted with the same legal error that makes the capitalization projections unacceptable. The city correctly contends that it was error of law to receive at the trial evidence of 51 sales of parcels in long-established, densely populated residential centers in Brooklyn and Queens; error, because the subject property was raw, vacant land in a remote inaccessible, undeveloped area.
Indeed this Avas conceded in principle by claimant’s chief witness Wittman who on examination by the Trial Judge testified he could not find anything reasonably similar in the metropolitan area and, therefore, he converted the subject land into comparability with 51 sales of land which had been utilized for middle-rise and high-rise apartment houses located in fully populated and long-established residential centers.
*472 He testified: “ I can’t compare an incomparable. It is impossible to make a comparison of a built up area to Breezy Point without considering it being built up and then deducting the cost.” Since there was nothing similar in size in the area, the witness noted he did the “next best thing” to find available sales 1 ‘ that I could make adjustments to ”, to find the indicated value of the land.
What Mr. Wittman was saying was, of course, that if he had not used the capitalization projections at Breezy Point, he would not have been able to point to the sites of developments used as comparables. In short, the predicate of claimant’s case on comparables was the capitalization projections and, therefore, claimant’s case on comparables falls, as a matter of law, in the same way as the valuations based directly on capitalization.
Essentially, therefore, the claimant’s proof of comparable sales was dependent on acceptance of income capitalization in different terms. The theory essentially depended on the projected completion of claimant’s entire future plan at a cost for construction alone of $275 million and on comparison of this projection with the other sample properties that had been completed.
The general rule as to comparable sales is that they must relate to' property in the vicinity “ similar to the property taken” (St. Agnes Cemetery v. State of New York, 3 N Y 2d 37, 44) and an erroneous theory of valuation presents a question of law (Latham Holding Co. v. State of New York, 16 N Y 2d 41, 44).
It should not be a matter of insuperable difficulty for claimant to establish the fair market value of the land taken in its actual physical state without recourse either to capitalization of income on unstarted projects or to comparisons of other properties essentially dependent on the same future projects. Some consideration should be given to the sale of the large acreage of contiguous land by claimant’s predecessor a few years before condemnation as well as the price paid by claimant for the land itself.
On the city’s further contention that it had title derived from the State of New York to the foreshore area between mean high tide and mean low tide, claimant has been correctly held at Special Term to be the owner.
*473 The statute (L. 1923, ch. 476) under which the city claims title contained a condition that acquisition of title depended on the city’s laying out beach lines. This was not done, and the statute was repealed (L. 1937, ch. 929). This prevented the city from later acquiring title by laying out beach lines.
In 1948 the State granted to the Rockaway Point Development Corporation, claimant’s predecessor in title, land which had accreted since 1930, including the present “ tip ’ ’. This was in settlement of litigation to which the city was a party; and in 1962 the State made a further grant to claimant of the land which had accreted since 1948 and of the submerged land that would accrete for the next 20 years. Thus, if the State had not lost its title to land under water by the 1923 statute, claimant has become vested with the State’s interest in the land under water and the accretions to it which the city now claims.
Besides this it seems evident that the State’s interest before 1923 had passed to the predecessors in title of claimant and that the State had no remaining right then to convey to the city. In 1887 the State had conveyed to Henry Y. Attrill all its right and interest in land then known as Rockaway Beach. Attrill is a predecessor in title to claimant. The city argues that this release did not cover the foreshore because it was in terms stated that the land release was 1 ‘ bound * * * by ” the ocean and other public waters and this term usually conveys only to the high-water mark.
Whatever may be the usual effect of such a term, it has been adjudicated in litigation between claimant’s predecessor and the State, in which the city also was a party, that the statutory release to Attrill of 1887 included the foreshore (Rockaway Pacific Corp. v. State of New York, 122 Misc. 503, affd. 214 App. Div. 843, affd. 243 N. Y. 556 [1926]). Since the city was also a claimant in the proceeding it would be bound by that determination, but in any case it was a determination which bound the State upon whose title both the city and claimant rest and thus the city would be collaterally estopped.
The order should be modified, without costs, by reversing the award to claimant and the matter remitted to the Supreme Court, Queens County, for further proceedings on the question *474 of damages in accordance with this opinion and, as modified, affirmed, without costs.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Beeitel, Jasen and Gibson concur in Per Curiam opinion.
Ordered accordingly.