Cooke, J.
In this eminent domain proceeding, claimants appeal from an order of the Appellate Division which modified, on the facts, a judgment of the Supreme Court, Suffolk *651 County, awarding $630,000 for the taking, after a nonjury trial, and reduced the award to $390,000.
Suffolk County instituted the proceeding, pursuant to the Suffolk County Improvement Act, in connection with the acquisition by it on June 4, 1970 of an undeveloped tract, found by Special Term and the Appellate Division to contain 126 acres and to be located in a Residence District "A” zone requiring a minimum of one acre for each one-family dwelling. The premises are in an unincorporated area of the Town of East Hampton, Suffolk County, and front approximately 3,288 feet on Swamp Road, a public highway, and, on the opposite side, border irregularly along about 5,035 feet of the shoreline of Northwest Creek. This stream runs into Northwest Harbor, which is connected with Gardiners Bay, and is subject to some tidal action. Claimants’ appraiser described the land along the road to be wooded and fairly flat, sloping gradually towards the creek, and estimated that 70% of the parcel was wooded and upland, with 30% meadowland. The county’s expert calculated 66 acres as wooded, which the county concedes to be upland, with the remainder being meadowland. Subparagraph 9 of the Rules and Regulations of the Town of East Hampton Planning Board provides that: "A minimum finished grade of seven (7) feet above MHW [mean high water] shall be required of all locations within subdivision adjacent to areas affected by tidal action.”
Although a preliminary subdivision map, laying out the property into plots with a lagoon at the waterfront, was filed by claimants with the Planning Board of the Town of East Hampton in 1966, it was not acted upon. There is no dispute, however, but that the highest and best use of the subject premises was for a potential residential subdivision. Brunswick, claimants’ real estate expert, valued the whole parcel as 126 acres of raw acreage at $11,000 per acre, zoned Residence District "A”, based on his adjustment of six comparable sales, for a total value of $1,386,000. Given, the county’s appraiser, utilized five sales, three of which were among those employed by Brunswick, and submitted a total valuation of $47,200. This sum was arrived at by valuing 66 acres at $5,000 per acre for $330,000, then deducting therefrom $33,000 for clearing and $250,000 for fill of the 66 acres, dividing the difference of $47,000 by 118 (acres), rounding the result to $400 per acre, and then concluding that the fair market value of the realty as of the date of vesting was $47,200. Given also viewed the *652 land in two other fashions, or "options” as stated by him, using $5,000 as the per acre value for 118 acres in each formulation. After deducting estimated costs for fill, clearing, sewers and water supply, one method was considered not economically feasible and the other was based on one-half acre plots, impermissible under existing zoning. When asked if "the $5,000 per acre value is your established market value based upon the market data approach of comparable sales”, he answered "Yes. Making adjustments for the other differences than the fill.”
Special Term found that "Given’s valuation of the property in terms of raw acreage at $5,000 an acre is without dispute” and that "[c]laimant’s are entitled to be compensated for 126 acres at * * * $630,000.” The Appellate Division found that "this award is improper, because it represents a raw acreage award rather than one for a potential subdivision [site].” It held that the "$5,000 per acre figure, giving an increment to the raw acreage value for its 'potential’, is reasonable for the 66 acres of upland property, but clearly not for the remaining 60 acres”. It concluded that the award for the entire parcel should be reduced to $390,000, reflecting a fair market value of the upland 66 acres at $5,000 per acre and that of the lower 60 at $1,000 per acre. There is no proof in the record ascribing to the lower acreage a value of $1,000 per acre, despite Special Term’s statement that the "Court must take judicial notice that the least desirable property would sell for more than $400.00 an acre in Suffolk County in 1970. In fact, such property would sell for more than $1,000.00 an acre.”
It is axiomatic that, in determining fair market value, the condemnees are entitled to have the appraisal based on the highest and best available use of the property, irrespective of whether they are so using it (Keator v State of New York, 23 NY2d 337, 339; St. Agnes Cemetery v State of New York, 3 NY2d 37, 41; Hazard Lewis Farms v State of New York, 1 AD2d 923, 924; Sparkill Realty Corp. v State of New York, 254 App Div 78, 82, affd 279 NY 656). There being no dispute that the most advantageous use of claimants’ property at the time of taking was as a potential residential subdivision (see Matter of City of New York [Shorefront High School — Rudnick], 25 NY2d 146, 149), the correct rule to be applied "was to treat the premises not as raw acreage nor as part of a completed development but as a potential subdivision site giving the acreage an increment in value because of that potential use” *653 (Hewitt v State of New York, 18 AD2d 1128; see, also, Tarricone v State of New York, 23 AD2d 804; Barra v State of New York, 22 AD2d 750; 4 Nichols, Eminent Domain [3d ed], § 12.3142 [1] [a]). Whenever such an increment must be added to the raw acreage value to reflect a property’s subdivision potential, the specific increment which is selected and applied must be based on sufficient evidence and be satisfactorily explained (County of Niagara v Bagwell, 36 AD2d 196, 197; South Path Realty Corp. v State of New York, 35 AD2d 896; Ridgeway Assoc. v State of New York, 32 AD2d 851, 852; Clearwater v State of New York, 30 AD2d 883, affd 23 NY2d 1006). In a situation where a potential subdivision site is valued by giving the acreage value an increment value, the determiner of the facts should set out the found acreage value and the found increment value, rather than the final per acre figure, so that intelligent review is permitted (Waldenmaier v State of New York, 33 AD2d 75; Holl v State of New York, 30 AD2d 592; Clearwater v State of New York, 28 AD2d 936; Golden Park Realty Corp. v State of New York, 28 AD2d 605, 606).
The evaluation of 66 acres of the property as made by the Appellate Division was arrived at, avowedly, by "giving an increment to the raw acreage value for its 'potential’.” Although the realty appraisers adjusted the subject parcel to their respective comparables, the record presents insufficient evidence or explanation of any increment to be added to a raw acreage value and, furthermore, the decision under review did not specify the acreage value and the increment found.
The order should be reversed and a new hearing ordered, without costs.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, etc.