OPINION OF THE COURT
 

 Fuchsberg, J.
 

 The issue at the heart of both these condemnation proceedings is whether a building owned and operated by each of the respondent nonprofit organizations was properly classified as a specialty and was therefore correctly evaluated in accordance with the cost of reproduction less depreciation method. In each instance, the building in its present form had been specially constructed for the organization at its clubhouse and had been so used ever since.
 

 In Matter of Rochester Urban Renewal Agency (Patchen Post) the structure was a fraternal meeting hall owned by a post of the Veterans of Foreign Wars. Though used primarily by and for its members, the facilities were made available without charge to other VFW posts, to their auxiliaries, and to other service groups. Respondent’s expert, on the assump
 
 *7
 
 tion that the property was a specialty despite the described use by others, supported the employment of the reproduction cost less depreciation basis. Petitioner’s expert, proceeding on the expressed premise that there is a "market for every product”, arrived at the conclusion that the building could be sold for income-producing use and that its price should therefore be fixed at "market value”. Trial Term, adopting respondent’s approach, rendered a total award of $223,471.50 plus interest. The Appellate Division affirmed (55 AD2d 1029).
 

 In Matter of Village of Newark Urban Renewal Agency (Newark Grange), the property consisted of a two-story plus basement brick structure used by respondent for its meetings and for public functions to which its primary facilities had been tailored at the time of construction. Additionally, however, these facilities were at times rented for temporary use by other civic organizations, while other portions of the building were leased to community-related tenants such as the local government and the area newspaper. Notwithstanding these collateral income-producing uses, Commissioners of Appraisal (see Condemnation Law, §§ 4, 13, repealed by L 1977, ch 839, § 2, eff July 1, 1978), after hearing the testimony adduced by each side, found that the property was a specialty and that the cost of reproduction less depreciation method was applicable. Measuring the value by that yardstick, their report, confirmed by the Wayne County Court, recommended an award of $160,627. The Appellate Division affirmed the judgment entered thereon (57 AD2d 1065).
 

 At the threshold, we note that our scope of review is narrow. In the present procedural posture of these cases, coming to us as they do with affirmed findings, we have no power to weigh the evidence or review the findings of fact
 
 (St. Agnes Cemetery v State of New York,
 
 3 NY2d 37, 40;
 
 Matter of City of New York [Sound View Houses],
 
 307 NY 687; Cohen and Karger, Powers of the New York Court of Appeals, § 119). Essentially, we must confine ourselves to the question of whether a proper evaluation technique was utilized
 
 (Acme Theatres v State of New York,
 
 26 NY2d 385, 388;
 
 Matter of City of New York [Exterior St.],
 
 285 NY 455, 458). Though the award in the Newark case, based as it is upon a report of the commissioners, whose findings are deemed entitled to the benefit of "every favorable intendment”
 
 ab initio (Auburn Renewal Agency v Schwartz Sons,
 
 41 NY2d 1026, affg 53 AD2d 1051;
 
 Matter of Huie [Fletcher
 
 — City
 
 of New York],
 
 2
 
 *8
 
 NY2d 168), may, if anything, reinforce the limitation on our review of factual matters, our power to set aside an award that rests upon erroneous appraisal principles nevertheless applies
 
 (Matter of City of New York [Atlantic Improvement Corp.], 28
 
 NY2d 465, 472;
 
 Latham Holding Co. v State of New York,
 
 16 NY2d 41, 44-45;
 
 Kingston Urban Renewal Agency v Strand Props.,
 
 33 AD2d 594 [Cooke, J.]).
 

 Turning at once to those principles, we note that, though an owner is guaranteed "just compensation” when private property is taken for public use under the power of eminent domain (US Const, 5th Arndt; NY Const, art I, § 7, subd [a]), there is no inflexible formula or set of inexorable rules by which that term is to be realized in dollars and cents (see
 
 United States v Fuller, 409 US
 
 488, 490;
 
 Matter of City of New York [School of Ind. Arts], 2
 
 Misc 2d 403). It is only the goal which is fixed, i.e., a reasonable and adequate award — the fair equivalent of the actual loss sustained
 
 (County of Erie v
 
 Fridenberg, 221 NY 389, 393; cf.
 
 Matter of Board of Water Supply,
 
 189 App Div 20).
 

 That loss ordinarily is represented by what it can reasonably be anticipated a prudent buyer would be willing to pay in an open market. Generally, this is based on the highest and best use to which the property may be put rather than the more limited use to which a particular owner may happen to be putting it at the time of its appropriation
 
 (Matter of County of Suffolk [Firester],
 
 37 NY2d 649, 652;
 
 St. Agnes Cemetery v State of New York,
 
 3 NY2d 37, 41
 
 supra).
 

 In ascertaining the highest and best use, courts give recognition to the fact that, in most cases, the "market value”, as that term itself implies, is not only capable of determination, but represents "just compensation” since it corresponds, though perhaps roughly, to the value of the property to the owner (1 Orgel, Valuation under Eminent Domain [2d ed], § 15). There is, moreover, another sense in which it may serve as a complete indemnity. Since this method of valuation is premised on the existence of a viable market for the property, the presence of that market and the obtaining of such an award presumably puts it within the owner’s power, to the extent that it is possible to do so with a commodity as idiosyncratic as real estate, actually to replace it, if he so desires.
 

 But when the property is of a kind seldom traded, it lacks a "market price” and there must accordingly be recourse to
 
 *9
 
 some other method of evaluation (see, e.g.,
 
 Kimball Laundry Co. v United States,
 
 338 US 1, 6). Churches, hospitals, clubhouses and like structures held by nonprofit agencies as centers for community service commonly fall within this category
 
 (Keator v State of New York,
 
 23 NY2d 337, 339;
 
 Matter of Simmons,
 
 127 NYS 940; 1 Orgel, Valuation under Eminent Domain [2d ed], § 40). A particular building may be regarded by the organization that owns and utilizes it as worth everything it cost to construct and more, yet it may not be "marketable” because no similar group would have sufficient need for the property to be willing to purchase it even at its reproduction value (see
 
 Keator v State of New York, supra,
 
 pp 339-340; cf.
 
 Amsterdam Urban Renewal Agency v Masonic Assn. of Amsterdam,
 
 39 AD2d 617).
 

 Although such properties are sometimes sold, the purpose of the acquisition usually is conversion to another use; hence such sales offer little, if any, guidance to an appraiser (see 4 Nichols, Eminent Domain, § 12.32, subd [1]). Evaluation under such circumstances will, at best, tend to be impermissibly speculative. Therefore, the quest for an objective criterion must not be so relentless that the special value of the property to its owner is ignored in deciding whether another method of evaluation is appropriate. For an owner of property like that of each of the respondents here "is entitled to be made whole, and making it whole means more than forcing it to abandon its non-profit community use and accept what it could obtain in the marketplace from a profit motivated purchaser”
 
 (United States v 564.54 Acres of Land,
 
 506 F2d 796, 800).
 

 Thus, we have recognized that properties of this character can be unique and have permitted them, once it has been established that market value is an unworkable tool, to be valued as specialties on the basis of reproduction cost less depreciation (see
 
 Keator v State of New York supra;
 
 cf.
 
 Matter of City of New York [Salvation Army],
 
 43 NY2d 512, 517, where we approved this approach voluntarily followed). When this method is employed, it has no relationship to market value as such; indeed, it reflects the need, under the prevailing circumstances, to resort to an entirely different technique for determining what is "just compensation” (see
 
 United States v 564.54 Acres of Land, supra).
 

 Applying these principles to each of the two cases now before us, the records contain sufficient proof to support the
 
 *10
 
 determinations that the uses to which their owners were devoting the properties at the time when each was taken were in accord with their highest and best use and that "just compensation” could only be achieved through a specialty approach. In neither can we say that that evaluation technique was erroneously applied as a matter of law.
 

 Both buildings were found to have been specially designed with unique structural features for which there was no recognizable market value. Neither the fact that the VFW extended its hospitality by making its clubhouse’s facilities available to other service organizations, nor that the Newark Grange property produced some rental income used to offset its operating expenses, required the Supreme Court in the one case, or the commissioners in the other, to find that either was not a specialty. These were no more than factual considerations to be taken into account in arriving at a determination of the use and character of each building and the availability, if any, of a market. Over all, there was evidence from which it could be found that at no time was each designed for, nor readily adaptable to, nor directed in its use towards, ends which were primarily commercial (cf.
 
 Amsterdam Urban Renewal Agency v Masonic Assn. of Amsterdam,
 
 39 AD2d 617,
 
 supra).
 

 Accordingly, the orders appealed from should be affirmed.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
 

 In each case: Order affirmed, with costs.