**J.J. NEWBERRY COMPANY, a Delaware Corporation, Appellant (Defendant Below),**

v.

**CITY OF EAST CHICAGO, Indiana for and on Behalf of its DEPARTMENT OF REDEVELOPMENT and Lake County Trust Company, an Indiana corporation, as Trustee under the provisions of the trust agreement dated the 4th day of February, 1974, known as Trust No. 2081, Appellees (Plaintiffs and Co-defendant below).**

No. 3–1080A331.

Court of Appeals of Indiana, Third District.

Oct. 26, 1982.

Rehearing Denied Dec. 28, 1982.

---

Timothy F. Kelly, Randall J. Nye, Beckman, Kelly & Smith, Hammond, for appellant.

Richard J. Lesniak, Given, Dawson & Cappas, East Chicago, for appellee City of East Chicago, Indiana For and on Behalf of its Department of Redevelopment.

Joseph S. Van Bokkelen, Goldsmith, Goodman, Ball & Van Bokkelen, Highland, for appellee Lake County Trust Co.

STATON, Judge.

J.J. Newberry Company appeals a condemnation award of $760.00 plus interest for its leasehold interest in property condemned by the City of East Chicago. On appeal, Newberry raises the following issues for review:

(1) Did the trial court err in not permitting Newberry's leasehold interest to be valued by using the capitalization of income method of valuation?

(2) Did the trial court err in determining that the condemnation award for Newberry's leasehold interest and the lessor's interest could not exceed the fair market value of the property as a whole?

Affirmed.

### I.

### Evidence

The record reveals that Newberry and the predecessors in interest of the beneficiaries of a land trust held by the Lake County Trust Company (hereinafter "lessor") executed a 25-year written lease agreement on September 30, 1953, for a parcel of real estate and the improvements thereon located in the Indiana Harbor region of the City of East Chicago. The 1953 lease entitled Newberry to continue to operate a variety store which had existed on the premises since 1926. The lease required rental payments of a fixed monthly amount plus a percentage of the gross annual income from the business.

On December 31, 1971, a fire of unknown origin completely destroyed the building and improvements which were the subject of Newberry's lease. Under a "fire clause" in the 1953 lease, the lessor was required to reconstruct the building if the building was damaged or destroyed by fire. The lessor failed to perform its obligations under the "fire clause," and Newberry was unable to operate its retail business on the premises.

On January 4, 1973, Newberry filed a complaint against the lessor and sought either specific performance of the "fire clause," or, in the alternative, an award of

compensatory damages for lost profits. A lengthy history of litigation ensued over a three-county area of northwest Indiana. The action culminated on December 16, 1980, with this Court's affirmance of the trial court's award of $116,910.33 as damages sustained by Newberry as a result of the lessor's breach of the "fire clause." *See Marcovich Land Corporation v. J.J. Newberry Company* (1980), Ind.App., 413 N.E.2d 935, (*trans. denied.*)

An event that affected the outcome of Newberry's action on the "fire clause" and generated the subject matter of this appeal was the condemnation of the vacant parcel of property. On June 16, 1976, the City of East Chicago exercised its power of eminent domain. As part of a project to redevelop blighted urban areas, the City of East Chicago condemned the property on which Newberry's variety store stood until the fire in 1971. The decision to condemn the property was made by the representatives of East Chicago with full knowledge of the litigation involving Newberry and the lessor for the breach of the "fire clause."

The condemnation action proceeded to trial without jury on July 26, 1979, on the issue of the amount to be awarded to Newberry and the lessor. After hearing the evidence and reviewing the trial briefs, the trial court entered the following judgment:

"It is therefore ordered that the property herein has been appropriated by eminent domain from the defendant Lake County, Trust # 2081, by the plaintiff, City of East Chicago, Indiana, for and on behalf of it's [sic] Department of Redevelopment; and that such property was subject to a leasehold interest owned by J.J. Newberry.

"It is further ordered that said plaintiff shall pay to the defendant, Lake County Trust Company, Trust # 2081, the sum of $44,240.00 for such appropriation, plus interest pursuant to I.C. 32–11–1–8 calculated from the date of possession by plaintiff;

"It is further ordered that said plaintiff shall pay to the defendant, J.J. Newberry, the sum of $760.00 plus interest pursu-

ant to I.C. 32–11–1–8 calculated from the date of possession by plaintiff.

"Done and ordered this 19th day of May, 1980." (Brackets supplied, punctuation original.)

Newberry appealed the trial court's award of $760.00 plus interest. The lessor did not appeal its award.

## II.

### Capitalization of Income Method

█ Newberry's first assignment of error involves a challenge to the trial court's method of valuing Newberry's leasehold interest in the destroyed premises on June 16, 1976, the date of condemnation. As of that date, Newberry had an unexpired term of approximately 28 months on its lease with the lessor. Newberry contended, and the trial court properly held, that a tenant is entitled to compensation for an unexpired term of lease terminated by a condemnation action. *Alamo Land & Cattle Co. v. Arizona* (1976), 424 U.S. 295, 303, 96 S.Ct. 910, 916, 47 L.Ed.2d 1; *State v. Heslar* (1971), 257 Ind. 307, 274 N.E.2d 261, 263, *reh. denied* (1972), 257 Ind. 625, 277 N.E.2d 796. However, the disputed issue at trial (and now on appeal) involved the method of valuing the unexpired term of Newberry's lease. Needless to say, the destruction of the building in 1971 and the subsequent five-year vacancy on the property complicated the trial court's resolution of the valuation issue.

In Conclusions of Law 7 and 8, the trial court held that Newberry's leasehold interest "is to be valued as the difference between the fari [*sic*] market rental value of subject premises less the contract rent to be paid over the remainder of the term of the lease" and that Newberry "is not entitled to lost profits as damages for the appropriation and condemnation of subject premises." Based upon the testimony of two qualified real estate appraisers who used the trial court's method of valuation, the trial court determined that Newberry's leasehold interest was worth $760.00. It is this method of valuation which Newberry challenges on appeal.

Newberry contends that the trial court committed reversible error in using the aforementioned method of valuation. Newberry posits that the trial court should have used the "capitalization of income method" of valuing a leasehold interest. Dr. Lesley Singer, an economist, testified on behalf of Newberry and stated that the capitalization of income method was the only feasible method of valuing a leasehold interest that had undergone the calamities suffered by Newberry's interest. According to Dr. Singer's computations, the capitalized value of Newberry's leasehold interest on the date of condemnation was $165,970.42. Newberry asserts that the trial court erred in not setting Newberry's condemnation award at that amount.

█ The capitalization of income method of valuing condemned property operates as follows:

"The income approach to valuation usually consists of arriving at an independent value of the land involved and adding to it the value of improvements arrived at by process of capitalization, i.e., converting reasonable or actual income at a reasonable rate of return (capitalization rate) into an indication of value. Land and improvements may be capitalized together in a single process." (Parentheses supplied.)

4 Sackman, *Nichols on Eminent Domain* § 12.32(3)(c), at 12–577 (3d rev. ed. 1981). Indiana courts permit the valuation of leasehold interests by the capitalization of income method under appropriate circumstances. *State v. Nelson* (1973), 156 Ind. App. 399, 296 N.E.2d 908. As was observed in *State Highway Commission v. Jones* (1977), 173 Ind.App. 243, 363 N.E.2d 1018, 1025:

"It follows that since the 'capitalization approach' is a valid tool for use in evaluating property in the market place, then such technique should be utilized by the courts in valuing property where it is the best means by which 'just compensation' can be afforded."

However, the more traditional method of valuing a leasehold interest for condemnation purposes was enunciated by the Indiana Supreme Court:

"Generally, the measure of damages where a leasehold interest is taken under eminent domain is the fair market value of the unexpired term of the lease over and above the rent stipulated to be paid."

*Heslar, supra*, 274 N.E.2d at 263. The *Heslar* method of valuation was employed by the trial court in the present case.

█ Upon reviewing the leading authorities on valuation of leasehold interests, this Court concludes that the trial court did not err in rejecting Newberry's request for use of the capitalization of income method. A proper application of the capitalization of income method requires that "the property is in good condition and capable of producing the income to be capitalized." 29A C.J.S. *Eminent Domain* § 168(2), at 724–25 (1965). Furthermore, "income cannot be capitalized to produce a residual value where the appropriated land is neither producing income nor equipped to do so...." *Id.* As such, the trial court properly rejected Newberry's alternate valuation method in light of the incendiary destruction of the building which Newberry used to produce income.

Case law from other jurisdictions support the general proposition of the law stated above. For example, in *United States v. Certain Interests in Property* (4th Cir. 1961), 296 F.2d 264, 269–70, the court held that the "very use of the capitalization-of-income method of evaluation assumes the valuation of the property as a going concern...." New York courts have reached a similar conclusion in cases wherein condemnees sought valuation under the capitalization of income method of vacant, unimproved property on which future improvements were to be constructed. *In re Rockaway Point Blvd., Queens County, New York* (1971), 28 N.Y.2d 465, 322 N.Y. S.2d 708, 271 N.E.2d 546; *Valcour Builders, Inc. v. State* (1967), 52 Misc.2d 760, 277 N.Y.S.2d 30. The underlying reasons for the courts' holdings were that a vacant, unimproved parcel of property was not conducive to valuation under the capitalization

of income method since it was the ongoing business which enhanced the value of the land.

 Under the particular circumstances of the present case, the trial court properly applied the *Heslar* method of valuation. The trial court correctly concluded that the capitalization of income method was too speculative to compute the fair market value of the property, regardless of the fact that Newberry had at one time operated a business on the property as a going concern. This Court "will not disturb an award of damages in a condemnation suit where the award is within the bounds of probative evidence introduced at trial." *Indiana & Michigan Electric Co. v. Hurm* (1981), Ind. App., 422 N.E.2d 371, 381. The record sustains the condemnation award in the present case, and the proper method of valuing Newberry's leasehold interest was used.

### III.

### Undivided Fee Rule

 Newberry's second challenge to the trial court's condemnation award is directed toward the trial court's Conclusion of Law 5, which provided:

"That the sum of the separate interest of each of the Defendants (Newberry and the lessor) in the subject premises cannot exceed the fair market value of subject premises as a whole." (Parentheses supplied.)

The trial court determined that the property was worth $45,000.00 on June 16, 1976. The lessor's interest was valued at $44,240.00, and Newberry's leasehold interest was valued at $760.00. Newberry contends that the superficially appealing truism that the sum of the parts cannot exceed the whole has no application in the law of eminent domain.

Newberry cites several cases from other jurisdictions in support of the proposition that the combined value of a leasehold interest and a reversionary interest may exceed the fair market value of the property as a whole. However, this Court need look no further than the unambiguous directives of the Indiana Supreme Court which stated:

"For the purposes of condemnation proceedings, the value of all the interests or estates in a single parcel of land cannot exceed the value of the property as a whole, and that when the value of the property as a unit is paid to the various owners, or into court for them, the constitutional requirements are fully met, and the fact that the owners of the various interests may not agree as to the apportionment among themselves of the sum awarded does not concern the condemnor."

*State v. Montgomery Circuit Court* (1959), 239 Ind. 337, 157 N.E.2d 577, 578, n. 1. Other Indiana appellate decisions have strictly adhered to the rule of law established in *Montgomery Circuit Court*. *State ex rel. Socony Mobil Oil Co. v. Delaware Circuit Court* (1964), 245 Ind. 154, 196 N.E.2d 752, 756; *Best Realty Corp. v. State* (1980), Ind.App., 400 N.E.2d 1204, 1206–07. The apportionment of the condemnation award between the tenant and the lessor prescribed by the Court is commonly known as the "undivided fee rule" and has wide application in other jurisdictions. *See,* 4 Sackman, *Nichols on Eminent Domain,* § 12.42(2), at 12–792 (3d rev. ed. 1981).

While Newberry characterizes the above passage from *Montgomery Circuit Court* as mere "dicta" which should carry no precedential value, this Court will adhere to the Supreme Court's resolution of the issue as manifested in footnote one of *Montgomery Circuit Court*. Until the high Court indicates a deviation from the aforementioned rule of apportionment, this Court is bound to follow the "undivided fee rule."

Affirmed.

HOFFMAN, P.J., and GARRARD, J., concur.