STATE OF INDIANA *v.* ARTHUR ROY WILLIAMS, RUTH M. WILLIAMS.

[No. 2-572A5. Filed June 29, 1973. Rehearing denied July 25, 1973.]

*Theodore L. Sendak*, Attorney General, *Wesley T. Wilson*, Deputy Attorney General, for appellant.

*William C. Barnard, James E. Hughes, Sommer, Tinkham, Barnard & Freiberger*, of counsel, of Indianapolis, for appellee.

SULLIVAN, J.—This is an appeal by the State of Indiana from an award for damages in an eminent domain action in the Clinton Circuit Court. The State of Indiana filed an action in the Clinton Circuit Court to condemn a strip across the front of land owned by defendants for the improvement of Highway 28 and for a temporary easement adjacent to said strip for use in removing a restaurant building projecting into the strip condemned. The court appointed appraisers assessed defendants' damages at $20,750.00. Both parties filed exceptions to this report. Upon trial, the jury awarded and judgment was entered for defendants in the sum of $43,250.00, plus interest.

Defendant-appellees Arthur Roy Williams and Ruth M. Williams (hereinafter referred to as Williams) owned real estate in Frankfort, Indiana in fee and also leased land adjacent to their property from the Penn Central Railroad Company.[1] Williams operated a drive-in restaurant business

---

1. The term of the lease was year to year but was subject to cancellation by either party upon 30 days notice.

upon the combined tracts. The State condemned a portion of that property owned by the defendants but not the property leased from Penn Central. Evidence of the lease was admitted over the State's objection. Testimony concerning the profits of the business was also admitted over the State's objection but the court refused to allow an appraiser's testimony for the State tending to establish the value of the condemned real estate by using an appraisal method dependent upon capitalized income of the business. The State filed a motion to correct errors which was overruled by the trial court. Upon review, we are presented with the following issues:

1. Whether the testimony regarding property not owned by defendants was properly admitted?
2. Whether the gross sales of the business conducted on the condemned property was admissible?
3. Whether net profit figures of drive-in restaurants in general and specific net profit figures of defendants' drive-in restaurant were admissible?
4. Whether the State's use of the capitalized income appraisal method was admissible?
5. Whether a tendered jury instruction was properly refused?

## TESTIMONY REGARDING PROPERTY LEASED BY DEFENDANTS WAS ADMISSIBLE AS LIMITED BY INSTRUCTION TO JURY

First, the State argues that it is highly probable that the jury included in Williams' damages the value of the lease as fixed by the testimony allowed at trial. They interpret both *State* v. *Heslar* (1971), 257 Ind. 307, 274 N.E.2d 261 and *Glendenning* v. *Stakley* (1910), 173 Ind. 674, 91 N.E. 234 to hold that such an inclusion is improper. However, the facts in both cases were decidedly different than in the case before us. In *Heslar*, the *leased* tract was condemned and the court was considering the effect of the leased condemned land upon adjacent leased property. (See also *State* v. *Nelson* (1973), 156 Ind. App. 399, 296 N.E.2d 908). *Glendenning* concerned the determination of the actual size of the tract that was dam-

aged by the taking of a portion of the whole tract. Neither situation is before us. Williams, on the other hand, contends that the testimony as to the lease was proper to be considered by the jury in determining the fair market value of the condemned property.

Fair market value has been defined by our Supreme Court in *Southern Indiana Gas & Electric Co.* v. *Gerhardt* (1961), 241 Ind. 389, 393, 172 N.E.2d 204 to be the following:

" 'The fair market value' is a determination of what the land may be sold for on the date of the taking if the owner were willing to sell. Anything affecting the sale value at that time is a proper matter for the jury's consideration in attempting to arrive at a 'fair market value.' "

The determination of market value is further explained by the following excerpt from 4 Sackman, Nichols' on *Eminent Domain*, § 12.314 (3rd Ed. 1971) :

"A use for which a piece of land is especially available need not be excluded from consideration merely because the availability depends upon extrinsic conditions, the existence or continuance of which is not within the control of the owner of the land. Thus a lot near a railroad station may be especially valuable for the site of a retail store, although the company if it saw fit might move the station away. The possibility of removal is considered and discounted by prospective purchasers, and thus is one of the elements in arriving at market value, but the existence of the station and the probability that it will remain should not be disregarded in determining market value for the purposes of eminent domain any more than it would be by a purchaser. In fact, it is not necessary that the extrinsic improvement which will make the land specially available for a particular purpose be in existence when the land is taken, if the probability of its being constructed in the immediate future is so strong as to have an effect upon present market value. Thus, where the adaptability for a specific use depends upon the land being used in combination with lands belonging to other persons, such use may be shown if the possibility of such combinations is so great as to have a definite effect in enhancing the market value of the property."

Thus, the effect of leased adjoining property may in some situations be properly considered when determining the fair market value of condemned property.

The State contends, however, that the court did not properly limit the testimony by advising the jury that they could not consider the actual value of the leasehold itself in determining the damage award. The record discloses that the State objected to the testimony concerning the leased property as follows:

"To which we will object to any testimony concerning any property other than the property that is owned by the two defendants here for the reason that that's the only property that the State is responsible to compensate for and that if other property was brought in would tend to. confuse the jury and the issues and, for that reason, we object to the introduction of evidence."

The court made the following ruling:

"I'm going to overrule this objection and permit limited testimony upon additional properties surrounding that actually taken by the main. The jury will be instructed at the conclusion of the trial on how and what grounds they may determine a verdict. The question may be answered and the future objections will be noted as having been objected to and motion to strike and exception taken and the overruling of the motion and so on."

At the conclusion of the evidence, the following directive was included in the judge's instructions to the jury:

"The defendants, Arthur R. Williams and his wife may not be compensated or awarded damages for property that they do not own."

The record also shows that the instructions were later reread to the jury. While we would perhaps agree that the above instruction could be rephrased so to be clearer and more helpful to the jury, we cannot say as a matter of law that the trial court did not sufficiently limit the effect the jury should give the testimony regarding the leased property. *Murphy Auto Sales, Inc.* v. *Coomer* (1953), 123 Ind. App. 709

at 724, 112 N.E.2d 589. See also *Evansville & Terre Haute R.R.* v. *Montgomery* (1882), 85 Ind. 494; *VerHulst* v. *Hoffman* (1972), 153 Ind. App. 64, 286 N.E.2d 214; *Coleman* v. *DeMoss* (1969), 144 Ind. App. 408, 246 N.E.2d 483.

Additionally, there is nothing of record to indicate that the State attempted to further limit the impact of the particular testimony by the tender of an applicable jury instruction. The appellant is not permitted to remain silent in such circumstance and thereafter claim that the instruction given by the court did not sufficiently limit the jury's consideration to relevant elements with respect to damages. *Hardebeck* v. *City of Anderson* (1965), 137 Ind. App. 455, 209 N.E.2d 769. Although *Berry* v. *State* (1972), 153 Ind. App. 387, 287 N.E. 2d 557 was a criminal appeal, its quotation from *Barker* v. *State* (1958), 238 Ind. 271, 150 N.E.2d 680 has general application and is appropriate:

> " 'Counsel, knowing the court is omitting the instruction upon some point in the case, may not remain quiet and tender no instruction and afterwards claim the court erred. Such practice would be wrong and mischievous.' " (287 N.E.2d 557, 562)

Nor can we say, as argued by the State, that the jury award necessarily included a sum representing the value of the leased land as opposed to the value of the land condemned as it may have been enhanced by the leased premises. *Union Mutual Life Insurance Co.* v. *Buchanan* (1885), 100 Ind. 63 at 84.

The State alternatively contends that the lease lacks a compensable value because it was cancellable upon thirty days notice. This assertion is based upon the following statement found in *State* v. *Heslar, supra*, at 264:

> "An estate in land which could be cancelled at any time does not seem to be an interest which would have a compensable value in a condemnation suit."

The State's assertion unjustifiably concludes that the jury did in fact include an amount in its award for the leased real

estate *per se*. The record in its entirety does not support this contention.

It is not error to admit testimony as to non-owned property when the testimony is properly limited. See *State ex rel. State Highway Commission* v. *Gray* (1970), 81 N.M. 399, ██ 467 P. 2d 725. Thus, we cannot conclude that there was error in admitting the testimony regarding the leased property as limited by the jury instruction.

## GROSS SALES FIGURES OF BUSINESS OPERATED ON CONDEMNED PROPERTY ARE ADMISSIBLE IN DETERMINING DAMAGES

The State contends that the trial court incorrectly allowed Williams to present gross sales figures of the business conducted on the condemned real estate. Claiming that to be admissible such income figures must be related to the value of the property, the State attempts to support its argument with the following statement from 4 Sackman, Nichols' on *Eminent Domain*, § 12.3121 (3rd Ed. 1971) :

> "In assessing the value of property on the basis of income, care must be taken to distinguish between income from the property and income from the business conducted upon the property."

However, this statement does not on its face support the State's contention. It merely draws a distinction saying nothing about relating either income figure to the value of the property. In addition, the State claims support for its assertion from a statement taken from 29A C.J.S., *Eminent Domain*, § 273(3) which if taken out of context might at first blush appear to lend such support.

From a consideration of the whole paragraph[2] from which the quoted statement is taken, it is obvious that the statement

---

2.   29A *CJS, Eminent Domain*, § 273(3) is as follows:
"Although testimony pertaining to income derived mainly from the skill of the operator of a business rather than from the productivity of the property should be excluded, the rental value of the property, the annual rent or income which it produces, and the profits derived from

refers to the admissibility of rents computed as a percentage of gross sales. Furthermore, the rule is well established that gross sales of a business on a particular parcel of real estate are relevant in determining that property's value. *State* v. *Jordan* (1966), 247 Ind. 361, 368, 215 N.E.2d 32. Accordingly, we conclude that the trial court correctly allowed testimony as to gross sales of the restaurant operated on the condemned property.

---

the use of the property are admissible whenever they would be an indication of value.

Testimony pertaining to income derived mainly from the skill of the operator of a business, rather than from the productivity of the property, should be excluded, and, accordingly, evidence of past profits of a business conducted on the condemned property, in the form of income, offered as an index of the property's market value, is ordinarily inadmissible. There are, however, well-established exceptions to the general rule. Peculiar circumstances of any particular case may make such evidence admissible, and it has been held that evidence of income derived from the successful operation of a business on the condemned property must be considered in fixing the value of the property based on its highest and best use.

It is ordinarily competent to show the rental value of the property, at least where it is adaptable only for a certain purpose, and it is also proper to show the actual rent or income which the property produces, and the profits derived from the use of the property whenever such profits would be an indication of value, as where the earnings depend chiefly on the location, soil, or character of the property itself; and so evidence has been held admissible to show the quantity of crops produced thereon or the productive character of the land.

Evidence as to rental value is inadmissible where its relation to market value of the property is too remote and speculative, and it has been held by some authorities that it is not proper to admit evidence concerning the productivity of the land taken, or, as a basis of estimating market value of the land, to show what rent or profits the property has yielded, or to testify as to anticipated future profits depending on speculative matters, although there is authority holding admissible evidence of the present value of clearly to be expected future earnings and evidence of prospective profits from mineral deposits.

Unless a proper deduction for value of the furnishings is taken into consideration, evidence of rental income from furnished apartments is inadmissible, since such rents reflect the market value of the real estate plus personal property, which is not taken. Evidence of the rental value or revenue derived from other lands in the vicinity is inadmissible, but there are decisions apparently inconsistent with this rule. Evidence as to the gross sales or the percentage thereof from which the rent was computed is inadmissible."

## ASSERTED ERROR WAIVED CONCERNING ADMISSIBILITY OF GENERAL NET PROFIT RATIO FIGURES

The State asserts that the court below erred when it permitted Williams to testify regarding the net profit ratio applicable to drive-in restaurants in general. The record discloses that the State's objection to the defendant's testimony which was overruled by the trial court was:

> "Well, the objection we would make, other than a general broad statement that he is familiar with the operations of the operations in this area is one thing, if they plan to go into the area that involves receipts and profits, that is another thing, but I think that for him to just generally say that he is familiar with what goes on into the area before he is permitted to testify about that then he must be more qualified by the counsel before he can go into that area."

General objections to the admission of evidence are not sufficient to preserve a question upon appeal. An objecting party must state a specific objection to the trial court when the evidence is offered. *Beaty* v. *Donaldson* (1964), 136 Ind. App. 269, 200 N.E.2d 233. If the above objection contains any semblance of specificity it is limited to the qualification and competence of the witness and does not bear upon the admissibility of net profit ratios. The objection therefore lacks the required degree of specificity and the argument sought to be herein presented may not be properly considered by us. *Dudley Sports Co.* v. *Schmitt* (1972), 151 Ind. App. 217, 279 N.E.2d 266.

Furthermore, the State does not cite authority for the proposition that evidence concerning net profit ratios of similar businesses is inadmissible, as required by AP. 8.3(A) (7). Thus this alleged error was waived. *Marshall* v. *Ewin* (1972), 152 Ind. App. 171, 282 N.E.2d 841.

## SPECIFIC NET PROFIT OF BUSINESS OPERATED ON CONDEMNED PROPERTY INADMISSIBLE

The State also argues that having admitted evidence of net-gross ratio, the trial court improperly refused to allow the cross-examination of Williams regarding the *specific* net income[3] from his business. However, the State then proceeds to recognize the rule of law that specific net profits from a business operated on a tract of land are too uncertain, remote and speculative to be used as a criterion for the value of the land. 4 Sackman, Nichols' on *Eminent Domain,* § 13.3(1) (3rd Ed. 1971) ; *Elson v. City of Indianapolis* (1965), 246 Ind. 337, 204 N.E. 2d 857. As a result, we cannot say that the trial court acted improperly in excluding testimony concerning the specific net profits of Williams' restaurant.

## INCORRECT APPLICATION OF APPRAISAL METHOD WAS PROPERLY EXCLUDED

The State next argues that the court erred in excluding appraiser's testimony using a capitalized income appraisal method in assessing the condemned property's value. While recognizing that net profits of the business conducted on the particular piece of condemned property are not generally admissible, the State contends that the use of profits in computing the capitalized income appraisal method is an exception to this rule. This assertion is based upon the following statement found in 4 Sackman, Nichols' on *Eminent Domain,* § 12.312(3) (3rd Ed. 1971) :

> "In the appraisal process used in determining value from income, it is the common practice to capitalize net income. In other words, the value is such sum as will, in accordance with the prevailing local rate of earning, produce annually a sum equivalent to the net annual income."

An examination of the cases cited in *Nichols'* treatise to support the above stated rule, however, reveals that they

---

3. Although the State specifically refers to net income, its argument is centered around the profits of the business.

involve rental income of the condemned property as opposed to profits of business being conducted on the condemned property. Income from property is an element to be considered in determining the market value of condemned property when the income is derived from the intrinsic nature of the property itself and not from the business conducted on the property. In *State* v. *Nelson, supra,* the court quoting from *City of Evansville* v. *Bartlett* (1962), 243 Ind. 464, 186 N.E.2d 10 (Rehearing denied 186 N.E.2d 799) acknowledged a vital distinction relative to capitalization of business profits:

> "In considering the question as to the admissibility of evidence pertaining to the profits from the business of the lessees, it must be kept in mind that in this case there are two separate properties taken, the real estate and improvements, and the business of the lessees. In this case the evidence as to the profits from the tavern business operated by the lessees related only to the value of the leasehold, and not to the value of the land and building, and was properly admitted as evidence of the amount of damages to which the lessees, Debes and Clements were entitled by reason of the taking of their business."

The State's appraiser here clearly attempted to base his use of the capitalized income method of appraisal upon the net profits of the business in this case as indicative of the value of the condemned land. The trial court properly excluded this testimony.

## JURY INSTRUCTION WAS NOT IMPROPERLY REFUSED

The State argues that the trial court improperly refused to give the following instruction:

> "The defendants, Arthur R. Williams and his wife, do not claim the taking by the State of Indiana, both permanent and temporary, forced them out of the drive-in restaurant business on the location that is the subject of the controversy and the award to them shall not include any amount that would tend to so compensate them."

A proper instruction must relate to the evidence and to the issues litigated. *Coleman* v. *Chapman* (1966), 139 Ind. App. 385, 220 N.E.2d 285. The State concedes in its brief that Williams did not specifically seek damages for the destruction of the business operated upon the premises. There is testimony of record that the best use of the property remaining after the condemnation is not as a drive-in restaurant. However, we cannot say that the trial court erred in its determination that the "issue" covered by the refused instruction was not litigated. Consequently, we cannot conclude that the trial court improperly refused to give the instruction. See *Christian* v. *Gates Rubber Co.* (1969), 145 Ind. App. 229, 250 N.E.2d 486.

Judgment affirmed.

Buchanan, P.J. and White, J., concur.

NOTE.—Reported at 297 N.E.2d 880.