STATE OF INDIANA, INDIANA STATE HIGHWAY COMMISSION *v.*
WILLIAM C. JONES ET AL.

[No. 2-675A143. Filed June 7, 1977. Rehearing denied July 18, 1977.
Transfer denied October 21, 1977.]

*Theodore L. Sendak,* Attorney General, *Susan J. Davis,* Deputy Attorney General, for appellant.

*Joseph T. Ives, Jr., Ives & Ives,* of Delphi, *Frank E. Tolbert, Miller, Tolbert, Hirschauer & Wildman,* of Logansport, for appellees.

## STATEMENT OF THE CASE

LOWDERMILK, J.—This case was transferred to this office from the Second District in order to help eliminate the disparity in caseloads among the Districts.

Plaintiff-appellant State of Indiana appeals from a judgment in which $469,850 was awarded to defendants-appellees Jones, et al. based on a condemnation proceeding brought by the State through its power of eminent domain in order to appropriate certain quarry lands owned by the defendants to construct a limited access highway.

We affirm.

## FACTS

William C. Jones, et al. were the owners of a 285 acre tract of land in Cass County, Indiana of which 131 acres were leased to Engineering Aggregates Corporation. Of that leased land approximately 74 acres were shown by scientific drilling and testing to have contained approximately 18 million tons of Class A limestone. Such limestone was also shown to have

extended to an average depth of 70 feet. A quarrying operation had been carried on at the leased site since 1965. In 1968 a survey was made by the state in preparation for the construction of an improved highway along the east side of the quarry. At that time Engineering Aggregates was told by the State not to work the quarry any further to the east. The quarry operators complied with the State's request.

In 1972 the State filed a complaint, thereby seeking condemnation of 26.416 acres of yet to be used quarry land for the purpose of building a limited access highway. The State's appropriation of the 26.416 acre tract also isolated another 12.234 acres of yet to be used quarry land from the main quarry operations, thereby rendering that isolated tract unsuitable for quarrying purposes.

Appraisers were appointed by the court. These appraisers valued defendants' loss at $281,859, $99,624 to the owners-lessors and $182,235 to the lessees. The State tendered the amount said to be due by the appraisers, but took exception to the appraisers' report saying that the award to the defendants was excessive. The defendants took exception to the appraisers' report, alleging that it was insufficient. Trial ensued with the only issue being that of the amount of damages and the method by which they were to be computed.

Various economic, scientific, and real estate experts testified for both sides. The experts were of little help in giving the jury sufficient guidelines from which damages could be assessed. The estimates of defendants' damages ranged from a low of $36,325 to a high of $750,000. The bulk of the witnesses of Jones, et al. estimated the damages to be between $400,000 and $700,000. The bulk of the State's witnesses estimated the damages to be about $38,000.

Most of the experts in the case at bar utilized a capitalization method in computing the damages. Capitalization is a method of computation which gives value to the land in relation to the income it produces. Some of the experts capitalized

only the rents from the lease, others capitalized the net income. Some included the lessee's interest in the land, others said the lessee's interest should not have been considered because it wasn't affected by appropriation. Some considered the isolated 12.234 acres in their computations, others did not. In short, there was no concensus among the experts as to how the damages should have been computed.

However, the evidence appears to be without dispute that the quarrying operation had achieved an average net profit of $80,000 per year immediately prior to the taking, that it had an annual growth rate of 3.8%, and that the skill of the operator and efficiency of the operation was determinative of the successful production of income. Other economic factors which were considered were the quantity and quality of the stone, whether there was a low overburden[1] and whether the quarry lands were close to a place of market. It was found that all of these factors were present in the land condemned by the State. Most of the experts agreed that the best use of the condemned land would have been for stone quarrying, rather than for farming or industrial use. Several experts indicated that when they are sold quarries are bought and sold upon the income they produce.

## ISSUES

This case presents the following issues for review:

1. Whether the court erred in refusing to give to the jury plaintiff's Motion for Order Compelling Discovery.

2. Whether the court erred in admitting, over the plaintiff's objection, defendants' Exhibit Number Four (4).

3. Whether the damages awarded by the jury were grossly excessive.

4. Whether the court erred in refusing to give to the jury plaintiff's tendered Instruction No. 1.

---

1. The overburden is the amount of dirt which covers the stone below. When the overburden is low the stone is more economical to quarry.

5. Whether the court erred in refusing to give to the jury plaintiff's tendered Instruction No. 3.

## DISCUSSION AND DECISION

### ISSUE ONE

The court denied the State's request for the production of documents under Ind. Rules of Procedure, Trial Rule 34, wherein the State sought copies of the written data compiled and the opinions formulated by the experts hired by Jones, et al. The State then made a motion to compel discovery under Ind. Rules of Procedure, Trial Rule 37, which was also overruled. The State alleges that the trial court erred in not granting its motion to compel discovery.

We find no error. In order for the State to utilize the discovery mechanism provided for within TR. 34, it must make its request in compliance with Ind. Rules of Procedure, Trial Rule 26(B), more specifically TR. 26(B)(3) when the data and opinions of experts are sought to be obtained.

TR. 26(B)(3)(a) requires that good cause be shown by the party seeking discovery before the facts and opinions, which were compiled and formulated in anticipation of litigation by the opposing party's experts, can be discovered. Where, however, an expert is retained not merely for the purpose of assisting in preparing for litigation, but where he will actually be called as a witness at trial, TR. 26(B)(3)(b), which does not require a showing of good cause, controls.

TR. 26(B)(3)(b) provides:

"(b)   As an alternative or in addition to obtaining discovery under subdivision (B)(3)(a) of this rule, a party by means of interrogatories may require any other party

(i)   to identify each person whom the other party expects to call as an expert witness at trial, and

(ii)   to state the subject-matter upon which the expert is expected to testify.

Thereafter, any party may discover from the expert or the other party facts known or opinions held by the expert which are relevant to the stated subject-matter. Discovery of the expert's opinions and the grounds therefor is restricted to those previously given or those to be given on direct examination at trial."

The State alleges that its motion for the production of the documents was within the scope of TR. 26(B) (3) (b) for the reason that it sought written data, facts, and opinions only from experts who were to be called as witnesses at trial. The State admits that it did not obtain the names of the expert witnesses and the subject-matter upon which they were to testify through interrogatories as provided in TR. 26(B) (3) (b), but rather that such knowledge was obtained through information voluntarily supplied by the counsel of Jones, et al. and from a list of witnesses included in the pre-trial order.

The language in TR. 26(B) (3) (b) is very clear in that it provides that interrogatories are the means by which a party may require another party to identify its expert witnesses and the subject matter upon which they shall testify. The use of interrogatories in this situation allows the parties to narrow the subject matter of all future discovery so that such future discovery will be limited to the facts and opinions that the expert witness will give on direct examination at trial, as provided in TR. 26(B) (3) (b). In answering interrogatories a party first has the time and opportunity to examine the data compiled and the opinions formulated by an expert, and he has the opportunity to determine the value of the expert's prospective testimony to his case, before he limits the subject matter upon which that expert will testify. Any other method would lend itself to generalities and would not allow the subject matter to be sufficiently limited before proceeding with further discovery.

Therefore, we hold that the State's failure to obtain by interrogatories the identity of the expert witnesses of Jones,

et al. and the subject matter upon which they were to testify precluded it from seeking further discovery of those expert witnesses. The motion to compel discovery was properly overruled.

## ISSUE TWO

The State has waived this issue for the reason that it failed to include Defendants' Exhibit No. Four in the record. From statements made by the State and from the foundation testimony for Defendants' Exhibit No. Four which does appear in the record, it seems that the exhibit was a cash flow data chart. According to Ind. Rules of Procedure, Appellate Rule 7.2(A)(2), copies of all papers filed with the clerk of the court are to be included in the record. This court cannot consider the propriety of the admission of a written document unless such document is included in the record. See *State* v. *Bryant* (1975), 167 Ind. App. 360, 338 N.E.2d 690.

## *ISSUE THREE*

The State contends that the damages awarded to Jones, et al. were grossly excessive. It alleges that the jury improperly disregarded the evidence presented by the State and that the jury must have relied upon the testimony of witnesses who utilized the capitalization method in computing damages, which method the State alleges is not proper for valuation purposes in these circumstances.

In regard to the first allegation, the jury is the trier of fact; it may weigh the testimonies of all the witnesses and give credence to whatever evidence is properly presented and to whomever it chooses. In the case at bar it was totally within the discretion of the jury to disregard the evidence presented by the State, if it chose to do so. The verdict of the jury need only have been supported by evidence which had been properly admitted,

irrespective of whether such evidence was presented by the State or by Jones, et al.

In determining what is just compensation for property taken by the State through its power of eminent domain the jury must ascertain the fair market value of the property taken, as well as any consequential damage which might have occurred to nearby property at the time of the taking. In *Southern Indiana Gas and Electric Co.* v. *Gerhardt* (1961), 241 Ind. 389, 172 N.E.2d 204 our Supreme Court said:

> "* * * The 'fair market value' is a determination of what the land may be sold for on the date of the taking if the owner were willing to sell [and a buyer were willing to buy]. Anything affecting the sale value at that time is a proper matter for the jury's consideration in attempting to arrive at a 'fair market value'." (Our insert)

It was held in *Gradison* v. *State* (1973), 260 Ind. 688, 300 N.E.2d 67, that the presence of stone, gravel, and minerals can be considered as elements that affect the value of land taken in condemnation proceedings. The value of minerals may not be determined separately from the land, but in all cases must be considered as a part of the land and valued together with the land as a unit.

In regard to fair market value 4 Nichols on Eminent Domain, Third Edition, § 12.1 remarks:

> ". . . It has been held to be equivalent to the *full value* [Original emphasis] of the property. All elements of value inherent in the property merit consideration in the valuation process. Every element which affects value and which would influence a prudent purchaser should be considered. No single element, standing alone, is decisive. . . . No general rule can be inflexibly adhered to. Each case necessarily differs from all others insofar as its factual situation is concerned, and exceptional circumstances render imperative a fair degree of elasticity in application of the fundamental rule.
>
> *"Irrespective of the method adopted for the ascertainment of such value, it is incumbent upon the condemnor to endeavor to reach a result that is truly 'just compensation,' that is, fair to the public as well as to the owner of the*

*property taken. The criteria for determination of compensation and the elements which command consideration have not become unalterably fixed, and consideration must be given to the nature of the property affected and the extent of the interest acquired. 'Value' is a term which is relative in character. . . ."* (Citations omitted) (Our emphasis)

In valuing property for condemnation purposes the general rule is that the courts should not look to business profits as an indicator of the value of the land for the reason that the success of a business depends so much upon the skill of the operator and the efficiency of the operation. An estimation of future profits is usually considered to be too speculative; a consideration of actual past profits is not usually considered to be an accurate indicator of profits in future years, because so many variables exist in regard to the successful processing and marketing of the product.

However, the courts must remain somewhat flexible. Since many variables are involved, the courts cannot say that one method of valuing property should be universally used to the exclusion of all others. The California Court of Appeals in *State* v. *Covich* (1968), 260 Cal. App.2d 663, 67 Cal.Rptr. 280, 282 has said:

"Both sides' appraisers also considered what has been referred to as the appraisal 'trinity.' This combines three methods or 'approaches' by appraisers to reach the market value of real estate: (1) the current *cost of reproducing* the property less depreciation from all sources; (2) the *'market data' approach* or value indicated by recent sales of comparable properties in the market, and (3) the *'income-approach,'* or the value which the property's net earning power will support based upon the capitalization of net income. This three-approach means of reaching market value is usually combined. It is stated in American Institute of Real Estate Appraisers. 'The Appraisal of Real Estate' (3d ed.) at page 66: '* * * In the majority of his assignments, the appraiser utilizes all three approaches. *On occasion he may believe the value indication from one approach will be more significant than from the other two,* yet he will use all three as a check against each and to test

his own judgment.' All three methods have been judicially approved. (United States v. Eden Memorial Park Association (9th Cir., 1965) 350 F.2d 933, 935.) In the 'income approach' various techniques are employed. *The technique selected will depend upon the belief of the appraiser making the appraisal as to the highest and best use of the subject property.*" (Our emphasis)

In the case at bar the "cost reproduction approach" was rejected as inapplicable to stone quarries by all the experts because it is more suited to the valuation of improvements on the land rather than to the land itself. The "market data" approach was rejected by most of the experts because they could discover very few, if any, sales of quarry properties with which a comparison could be made in order to accurately assess the value of the property now in dispute. Thus, most of the experts, including some of the State's, used a variation of the "income approach," that is, they capitalized the net income from the business and/or the royalties from the lease as these factors reflected the *present value* of the quarry property.

Many courts have rejected this capitalization technique upon the theory that it relies too much upon conjecture and that it opens the door to evaluating the business and accounting methods utilized by a company. That is a viable argument, but it must be remembered that the purpose in valuing the condemned land is to give the person whose land has been taken "just compensation" for his loss. There is ample evidence in the case at bar which shows that quarries and quarry lands have value beyond that of ordinary commercial and industrial land and are sold on the market in relation to the income they produce.

As an argument against the use of the capitalization method in determining value the State directs the attention of this court to *State* v. *Williams* (1973), 156 Ind. App. 625, 297 N.E.2d 880, 886, wherein the court said:

". . . Income from property is an element to be considered in determining the market value of condemned prop-

erty when the income is derived from the intrinsic nature of the property itself and not from the business conducted on the property. . . ."

The State asserts that the quarrying operation in the case at bar was a "business conducted on the property" and that any evidence concerning the capitalization of income from that business would be inadmissible. We find that *Williams, supra,* is distinguishable in that it dealt with a restaurant business which was being conducted on the land, rather than a quarrying business, as here, which derives its income by processing material which is an intrinsic part of the land.

In *U.S.* v. *25.406 Acres of Land, etc.* (4th Cir. 1949), 172 F.2d 990, 993, the Court of Appeals said:

". . . Certainly such matters would be considered by any business man in selling, buying or valuing the property; and *when the court adopts the standards of the market place in making valuations there is no reason why it should close its eyes to how the market place arrives at and applies the standards.* As was well said by the late Judge Henry G. Connor, one of the great judges of this Circuit, 'It is difficult to perceive why testimony, which experience has taught is generally found to be safely relied upon by men in their important business affairs outside, should be rejected inside the courthouse.' Wade v. Carolina Tel. & Tel. Co., 147 N.C. 219, 60 S.E. 987, 989." (Our emphasis)

It follows that since the "capitalization approach" is a valid tool for use in evaluating property in the market place, then such technique should be utilized by the courts in valuing property where it is the best means by which "just compensation" can be afforded.

In *State* v. *Nunes* (1963), 233 Ore. 547, 379 P.2d 579, 584-585, the Oregon Supreme Court said:

"The capitalization of income when properly employed is an acceptable method of arriving at the value of property. *There is no reason why it should not be employed with proper safeguards in the valuation of land, the principal value of which is attributable to income produced from the sale of soil materials.* This does not mean that the value of the land can be estimated simply by multiplying the

quantity of materials times the existing market price per unit. The appraiser must refine the computation by deducting costs of operation, making allowances for variances in the market price of the materials, calculating the extent of the market for such materials in relation to the amount of materials taken, the possible rise and fall of income, and accounting for other factors which expert appraisers take into consideration in applying the capitalization method.

"The capitalization method or any other method of evaluation is merely a rough guide in estimating the value of property. It is recognized that the appraisal of property involves a considerable amount of guesswork. And at the litigation state the uncertainties are compounded because the appraisals frequently reflect the bias of the witnesses. *But an estimate must be made and the courts must do the best they can with an imperfect method.*" (Our emphasis) (citations omitted)

We hold that where income is produced from the sale of minerals or other soil materials, then the "income approach" for valuing land with its incumbent use of the capitalization method is proper where such is the best method for ascertaining the fair market value. In the case at bar, which we are now asked to decide, several experts opined that the capitalization method was the best method to determine value. Such evidence was admissible for the reason that this case involves the appropriation of land suitable for quarrying which was a part of an ongoing quarrying operation, the purpose of which was to process materials intrinsic to the land. The capitalization of income was not used to project future profits and to compensate the lessor and lessee for those lost profits, but rather it was used to calculate the fair market value of the land at the time of the taking.

In view of the fact that the "income value approach" with its accompanying capitalization method was determined by the expert appraisers to be the best means by which the fair market value of the appropriate quarry land could be ascertained and in view of the fact that the compensatory award made by the jury to Jones, et al. was within the estimations

of value made by those experts, then we cannot say that the damages awarded were excessive as a matter of law.

## ISSUES FOUR AND FIVE

For the reason that the State's last two allegations of error concerning the refusal of the court to give the State's tendered Instructions No. 1 and No. 3 contain similar questions of law, we will treat them together in one discussion.

The State's tendered jury instructions which the court refused to give are as follows:

> "PLAINTIFF's TENDERED INSTRUCTION NO. 1
> You are further instructed that any evidence of the present volume of any business being conducted on the premises by any lessee is to be considered by you only for the purpose of allocating between the various defendants, the amount of their interests, if any, in your total award of damages to the defendants and that it is improper for you to consider such business profits or volume as evidence of the value of the land or any interest thereon."

> "PLAINTIFF'S TENDERED INSTRUCTION NO. 3
> You are instructed that future business profits, or the volume of business resulting from future operations on the property are too uncertain, remote, and speculative, to be used as the measure in establishing the market value of the land upon which the business is conducted. *Neither the value of such business* nor the future profits therefrom, are to be considered by you in arriving at the fair market value of the land upon which the business is conducted." (Our emphasis)

The trial court rightfully excluded both of the above instructions because they do not correctly state the law involved in the present case. Plaintiff's Tendered Instruction No. 1 is incorrect in that it instructs the jury not to consider business profits as an element which contributes to the value of the land. However, as it was pointed out above, where income is produced by the sale of minerals or other soil materials which are an intrinsic part of the land, then the capitalization of

business profits may be proper. Therefore those profits may be considered by the jury to the extent that they reflect upon the value of the land at the time of the taking.

Plaintiff's Tendered Instruction No. 3 is correct to the extent that it excludes consideration by the jury of future business profits per se. But it is overly broad in that it would have the jury not consider the value of the business as it relates to the value of the land. As it was pointed out above, there is a direct and proportional relationship between the value of quarry lands and the value of the quarrying operation which is being conducted upon those lands. Under the circumstances of this case the profits and value of the business may be considered as they relate to the present value of the land.

Unless the court is under a duty to give a certain instruction precisely as written, it may refuse to submit that instruction to the jury without committing error. See *Van-Sickle* v. *Kokomo Water Works Co.* (1959), 239 Ind. 612, 158 N.E.2d 460.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 363 N.E.2d 1018.