**TOWN OF NEWBURGH,**
**Appellant–Plaintiff,**

v.

**Albert PECKA and Mary Pecka,**
**Appellees–Defendants.**

**No. 87A01–9210–CV–350.**

Court of Appeals of Indiana,
First District.

March 4, 1993.

Rehearing Denied April 27, 1993.

R. Thomas Bodkin, J. Herbert Davis, Evansville, for appellant-plaintiff.

Charles L. Martin, Boonville, for appellees-defendants.

ROBERTSON, Judge.

The Town of Newburgh appeals the judgment entered after a jury trial in favor of Albert and Mary Pecka in the amount of $19,694.68. Newburgh brought condemnation proceedings to acquire a permanent easement across 1.01 acres of the Peckas' farmland for a gravity sewer collection and transmission line. Newburgh raises three (3) issues, but because one constitutes reversible error, we address it only. Restated, it is:

> Whether the trial court erred in permitting evidence of lost profits to be awarded as consequential damages in addition to market damages measured by the decrease in the value of the land (resulting from its diminished ability to grow crops) caused by the installation of the sewer line?

## FACTS

The facts in the light most favorable to the verdict indicate that Newburgh installed a sewer line across a thirty (30) acre tract of the Peckas' farmland. The easement itself consists of 1.01 acres of that land. The Peckas are permitted to grow crops on the easement. But, when the sewer line was installed, the soil in the easement area was tremendously compacted and the soil surrounding the easement was disrupted. In addition, the installation of the line caused some damage to the Peckas' drainage tile system decreasing the land's ability to drain off surface water. These damages to the tract have had a negative impact upon the ability of the land to produce crops and a corresponding negative impact upon the land's market value.

A crop extension expert and agronomy teacher testified that the installation of the sewer line damaged the soil and would decrease crop yields over the next several years. He recommended that the compacted area be deep tilled and leveled. He also recommended that phosphorus, potash, and micronutrients be added to the soil. Over Newburgh's objection, he estimated that the profits or income that the Peckas' would lose from the diminished crop yields over the next seven years would equal Eight Thousand Four Hundred Dollars ($8,400.00).

A real estate appraiser gave his opinion of the Peckas' condemnation damages using the comparable sales method. He testified that the thirty (30) acre tract was worth $3,000.00 per acre before the take based upon recent sales of farmland of similar quality. He testified that the damage caused by laying the sewer line diminished the ability of the land to grow crops and lowered its value. He then compared the damaged farmland to farmland of similar quality which had recently sold and determined that the 1.01 acre taken for the easement was worthless and that the remaining 29 acres in the tract were worth $2,300.00 per acre for total condemnation damages of $23,300.00 [$3000.00 for the one acre taken for the easement + 29 × $700.00 for the decrease in value to the remaining 29 acres]. Over Newburgh's objection, this real estate appraiser also gave his opinion regarding the Peckas' lost profits. He described his computation methodology and concluded that the profits or income that the Peckas would lose over the next several years from the diminished ability of the land to produce crops would equal $8,400.00.

## DECISION

In their brief, the Peckas assert that the trial court properly admitted the evidence of the profits lost from the diminished crop yields as the incidental or consequential damages properly awarded as condemnation damages. They also argue that no error could have come from the introduction of the lost profits evidence because the verdict is supported by the appraiser's estimate of damages based on the comparable sales method. The problem with this case is obvious. Lost profits awarded as consequential damages due to an expectation of diminished crop yields, coupled with an award based on the reduction of value in

the land based on the identical diminished ability of the land to produce crops, results in a duplicitous recovery. Duplicitous recoveries are heavily disfavored in law. *Chaiken v. Eldon Emmor & Co., Inc.* (1992), Ind.App., 597 N.E.2d 337.

### A.

Whether lost profits from farming are an appropriate element of damages in the condemnation of farmland?

■ In determining just compensation for property taken, the jury must ascertain the fair market value of the property taken as well as any consequential damages which might have occurred to nearby property at the time of taking. *State, Highway Commission v. Jones* (1977), 173 Ind.App. 243, 363 N.E.2d 1018, *trans. denied.* Indiana Code 32–11–1–6 defines the elements of damages which may be awarded in condemnation. The Peckas rely on the fourth element of the statute in support of their contention that their lost farming profits were appropriately considered as an element of their damages. The fourth element of I.C. 32–11–1–6 reads:

Such other damages, if any, as will result to any persons or corporation from the construction of the improvements in the manner proposed by the plaintiff.

The Peckas rely on *State v. Stabb* (1948), 226 Ind. 319, 79 N.E.2d 392, in support of their contention that Indiana cases "disclose a consistent trend of permitting evidence of lost profits and lost income in condemnation cases." (Peckas' brief p. 7.)

In *State v. Heslar* (1971), 257 Ind. 307, 274 N.E.2d 261, our supreme court analyzed the elements of I.C. 32–11–1–6 and determined that the admission of evidence of lost profits constituted reversible error. In so holding, the supreme court noted:

Thus, it was error to allow testimony on [lost profits]. Such items are too remote and speculative to be used as criteria for the establishment of damages in a condemnation suit of this nature. In fact, it appears from reading the fourth element of damages in the statute, that it was intended to recompense a person for damages resulting from the method of construction in a physical sense. The statute states that it applies to damages which result from the '*construction* of the *improvements* in the *manner* proposed * * * ' It is intended to cover such conditions as a total denial of access due to the method of construction. It was not intended to cover any or all consequential damages of any kind. *State v. Stabb* (1948), 226 Ind. 319, 79 N.E.2d 392, contained language that any consequential damages were allowable,.... [W]e here expressly overrule *State v. Stabb* as it relates to damages for loss of profits and to its definition of consequential damages. Our policy should not be such as to place an undue burden upon the State in acquiring land for such public improvements as highway construction when such improvements are considered to be in the public interest. Allowance of such remote and highly speculative items as loss of business or profits would do just that.

·It was prejudicial error to allow evidence as to loss of profits ...

257 Ind. at 315, 274 N.E.2d at 266 (Emphasis in original). *State v. Stabb*, 79 N.E.2d 392, does not establish a trend of permitting evidence of lost profits in condemnation cases as the Peckas' assert; its holding with regard to lost profits and its definition of consequential damages has been expressly overruled. *State v. Heslar*, 274 N.E.2d 261. Evidence of lost income or profits as consequential damages are not permitted in condemnation cases. *Id.*

In the present case, the Peckas' lost income from the farming operation is reflected in the lower value of the land as calculated under the comparable sales method. The evidence of the lost profits not only was too remote and speculative, but also permitted a duplicitous recovery. The trial court erred by permitting evidence of the expectation of lost profits from the Peckas' farming operation as an element of condemnation damages.

### B.

Whether the evidence of lost profits is admissible because crops are an "intrinsic" part of the land?

■ The Peckas assert the evidence of lost profits was admissible because crops

are an intrinsic part of the land, citing *State, Highway Commission v. Jones*, 363 N.E.2d 1018. In *Jones*, we approved of the use of evidence of lost income as a variable in the computation of the value of quarry land under the income capitalization method because the income was to have been derived from the intrinsic nature of the property itself and not from the business conducted on the property. *Id.* at 1024.

. We need not decide whether income from farmland is derived from its intrinsic nature. *Jones* is inapposite because the Peckas did not employ the income capitalization method to calculate a value for the farmland. Instead, the Peckas' sought to recover lost income as consequential damages in addition to damages computed under the comparable sales method.

### CONCLUSION

The trial court erred in permitting evidence of lost profits. Therefore, we must reverse and remand for a new trial.

Judgment reversed.

BAKER and CONOVER, JJ., concur.