STATE of Indiana, Appellant (Plaintiff below),

v.

Stephen BISHOP, Molly Bishop, Dale Gladden and Hendricks County, Indiana, Appellees (Defendants below).

No. 32S01–0302–CV–72.

Supreme Court of Indiana.

Dec. 31, 2003.

**920**

Steve Carter, Attorney General, Janet Parsanko, Deputy Attorney General, Office of Attorney General, Indianapolis, IN, Attorneys for Appellant.

William O. Harrington, Danville, IN, Marvin Mitchell, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

This is an eminent domain proceeding in which the State condemned land adjoining an interstate highway in order to build an interchange. We consider two questions we have never addressed before. First, does a party who has filed objections to the report of court-appointed appraisers have an absolute right to withdraw the objections? Second, by what method does one assess the fair market value of a billboard that is taken in condemnation? We affirm in part and reverse in part.

## Statement of Facts

On December 6, 1996, the State of Indiana filed an action to appropriate a portion of Stephen and Molly Bishop's real estate for the purpose of constructing a cloverleaf interchange at the intersection of Interstate 70 and State Road 267 in Hendricks County. The State had previously offered the Bishops about $99,400 to purchase the land, which is located along I–70 east of State Road 267 and is divided by I–70 into northern and southern parcels. The State condemned 1.177 acres, 0.681 acres of the northern parcel and 0.496 of the southern parcel, upon which four billboards were located. The residue of the Bishops' land was some 73 acres.

The court-appointed appraisers filed their report on November 14, 1997, assessing the fair market value of the land as $23,565 and the fair market value of improvements to the land as $167,945 (for a total value of $191,510). On December 10, 1997,[1] the State filed exceptions to the appraisers' report as to the value of the improvements. The Bishops did not file exceptions.

In early 1998, the State deposited $191,510 with the clerk of the court.[2] The Bishops filed a request for payment of the appraisers' amount. The State had no objection so the court ordered the clerk to

1. Some of the entries in the Chronological Case Summary appear to reflect the date that the filing was received instead of the mailing date, which is when filing is complete under Indiana Trial Rule 5(E). Because these dates do not affect the parties' legal contentions, we use the dates as entered.

2. Indiana Code § 32–24–1–10 allows a condemning party to take possession of the appropriated property and use it for the purposes stated in the complaint if the party pays the amount assessed by the court-appointed appraisers to the circuit court clerk. This possession is subject to an appeal regarding the appropriation itself (as provided for in § 32–24–1–8) and does not interfere with a trial on damages pursuant to a party's filing of exceptions to the appraisers' report (under § 32–24–1–11). Ind.Code Ann. §§ 32–24–1–8–11 (West 2002).

pay the Bishops the amount on deposit. About this time, the Bishops sold most of the billboards to an outdoor advertising company for $2000 and gave an easement to place them along the Interstate at a price of $598,000.

The court entered a scheduling order on June 7, 1999, setting the case for trial on April 11, 2000. The parties filed witness and exhibit lists and undertook discovery. An attempt at mediation failed to produce a settlement. On March 28, 2000, the State moved to withdraw its exceptions and asked for entry of judgment.[3] The Bishops objected to the State's request to withdraw its exceptions, and on May 4, 2000, the trial court denied the motion.

On April 18, 2000, the Bishops filed a motion in limine, seeking to prohibit testimony about compensation other than fair market value, by which they meant the State's desire to pay the value of the land taken, the value of the one billboard taken, and the cost to move the remaining three billboards onto the Bishops' remaining property. The State filed a brief in opposition. After a hearing, the trial court issued an order on January 31, 2001, prohibiting the State from presenting any evidence regarding the cost of relocating the billboards or mentioning that the Bishops have billboards on their remaining property. The State subsequently filed a motion in limine to prohibit evidence of lost income or profits or the use of the capitalization of income approach to determining fair market value. The motion was denied.

The trial occurred in March 2001, and the jury returned a verdict of $595,000. The court deducted the money the State had already paid, then added $102,195.78 in interest and $2,500 in litigation expenses.

The State appealed, and the Court of Appeals affirmed. *State v. Bishop*, 775 N.E.2d 335 (Ind.Ct.App.2002). We granted transfer.

The State alleges three errors by the trial court: (1) the denial of its motion to withdraw its exceptions, (2) the admission of evidence regarding capitalization of income, and (3) the exclusion of evidence regarding the cost to move the existing billboards. We will address the denial of the motion to withdraw exceptions first and the two contentions regarding the proper measure of damages second.

## I. Can a Party Withdraw Its Exceptions?

■ The State argues that a party has an absolute right to withdraw its exceptions to the appraisers' report, and says the trial court thus erred in disallowing the State's motion to withdraw. The State correctly observes that when the only party to file exceptions to the appraisers' report later withdraws those exceptions, no issues remain for the trial court to decide. *State v. Redmon*, 205 Ind. 335, 186 N.E. 328 (1933). The State is incorrect, however, in its position that a party has an absolute right to withdraw.

Although *Denny v. State*, 244 Ind. 5, 189 N.E.2d 820 (1963), appeared to presume an absolute right to withdraw exceptions, subsequent cases have held that a pretrial order can restrict a party's ability to withdraw. *See State v. Blount*, 154 Ind.App. 580, 290 N.E.2d 480 (1972) (party may ordinarily withdraw exceptions if its motion is timely but when a party agrees to a pretrial order limiting the parties' ability to change the trial plan, then does not seek to modify it, the party has no basis to

---

3. On April 3, 2000, the State filed its statutorily-required pre-trial offer to settle. Ind.Code Ann. § 32–24–1–12 (West 2002). The State

offered the Bishops $267,300 to settle all of the claims.

object when judge denies its motion); *McGill v. Muddy Fork of Silver Creek Watershed Conservancy District,* 175 Ind. App. 48, 370 N.E.2d 365 (1977) (in absence of an express agreement or order, motion was timely and party could withdraw); *Public Serv. Co. of Ind. v. Rounder,* 423 N.E.2d 666, 667 (Ind.Ct.App.1981) ("Absent an express pretrial agreement, a pretrial order or other controlling order, a party may withdraw its exceptions to an appraisers' award.").

In *Daugherty v. State,* 699 N.E.2d 780 (Ind.Ct.App.1998), the Court of Appeals recognized that the practical effect of these cases was to place the decision whether to grant or deny the motion at the discretion of the trial court. As Judge Kirsch wrote:

> The effect of the *Blount* decision and the subsequent cases that recognized this exception was to create a rule that was regulated through the trial court's discretion. Our decision here makes explicit what was implied in *Blount:* a party does not have an absolute right to withdraw exceptions to the appraisers' report; rather, the withdrawal of exceptions is subject to the trial court's discretion. While the court in the exercise of such discretion may ordinarily allow the withdrawal, it may deny the request to withdraw or condition the withdrawal upon such terms and conditions as the court deems necessary to avoid injustice.

*Id.* at 782.

We conclude that the exercise of discretion concerning withdrawal, based on factors such as timeliness and inconvenience to opposing parties is more likely to produce just outcomes than a rule conferring an absolute right of withdrawal. The *Daugherty* court held that "[t]he trial court in exercising its discretion should allow the withdrawal of exceptions except in instances where injustice would result."

699 N.E.2d at 782–83. We emphasize what the *Daugherty* court said—reiterated by the Court of Appeals in this case: parties who wish to insure a trial on the merits should file their own timely exceptions, and those who file should recognize that they may not be permitted to withdraw those exceptions and terminate litigation which they have begun.

■ The State argues alternatively that the trial court abused its discretion in denying the motion. The *Daugherty* court proposed the following non-exclusive factors for the trial court to consider in making its determination:

> [1] the length of time between the filing of the appraisers' report and the motion to withdraw, [2] whether the withdrawing party is attempting to do so on the eve of the trial, [3] whether the withdrawing party and trial court have been put on notice of the other party's dissatisfaction with the report, either that be through the filing of belated exceptions or otherwise, and [4] the extent of trial preparation which has already occurred, including the securing of expert witnesses and the extent of discovery.

*Id.* at 783. We adopt this approach, emphasizing that the factors are not a four-part test but are merely a non-exclusive list of circumstances for the trial judge to consider when exercising discretion. Appellate courts will reverse only where the court's decision "is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn from those facts and circumstances." *Lucre Corp. v. County of Gibson,* 657 N.E.2d 150, 152 (Ind.Ct.App.1995).

Following this approach, we cannot say it was an abuse of discretion for the trial court to deny the State's motion. The

State filed its exceptions to the appraisers' report on December 9, 1997, and did not seek to withdraw its exceptions until two years and four months later—fifteen days before the scheduled trial. In addition, the State was arguably put on notice of the Bishops' dissatisfaction with the report through information exchanged during discovery or during mediation. Finally, the Bishops claim that they had exchanged interrogatories, retained two expert witnesses and "spent several tens of thousands of dollars on attorneys' fees, appraisers and other expenditures." (App. at 189.)

The trial court might well have allowed the withdrawal, or conditioned it upon the payment of the Bishop's litigation expenses. Filing a request to withdraw after two years and four months may be understandable in cases where a party conducted discovery and attempted mediation then realized that the appraisers' amount was reasonable. Similarly, whether the withdrawing party is attempting to withdraw on the "eve" of trial is also relevant. *See McGill*, 175 Ind.App. 48, 370 N.E.2d 365 (motion to withdraw made six days before trial held timely). The State also argues that the Bishops would have incurred many of the same expenses even if the State had withdrawn its exceptions much earlier. Finally, the State argues that the Bishops did not demonstrate that the withdrawal would result in injustice.

Despite these arguments, we cannot say that the trial court abused its discretion.

## II. Fair Market Value of Billboards

The State argues that the trial court erred both in admitting evidence relating to the capitalization of income approach for determining fair market value and in excluding evidence of the cost to move the billboards. Because both alleged errors relate to the proper way to determine damages, we address them together.

■■ "It is well established in Indiana that the basic measure of damages in eminent domain cases is the fair market value of the property at the time of the take." *State v. Church of the Nazarene of Logansport*, 268 Ind. 523, 526, 377 N.E.2d 607, 608 (1978).[4] "Fair market value is the price at which property would change hands between a willing buyer and seller, neither being under any compulsion to consummate the sale." *Ohio Cas. Ins. Co. v. Ramsey*, 439 N.E.2d 1162, 1167 (Ind.Ct. App.1982). "Anything affecting the sale value [on the date of the taking] ... is a proper matter for the jury's consideration in attempting to arrive at a 'fair market value.'" *Southern Ind. Gas & Elec. Co. v. Gerhardt*, 241 Ind. 389, 393, 172 N.E.2d 204, 205–6 (1961).

Three widely accepted approaches to estimating the fair market value of property taken by eminent domain are:

(1) the current *cost of reproducing* the property less depreciation from all

4. Indiana Code § 32–24–1–9(g), which governs the amount of compensation to be awarded in eminent domain cases, states:

For the purpose of assessing compensation and damages, the right to compensation and damages is considered to have accrued as of the date of the service of the notice provided in section 6 of this chapter, and actual value of compensation and damages at that date shall be:

(1) the measure of compensation for all property to be actually acquired; and

(2) the basis of damages to property not actually acquired but injuriously affected; except as to the damages stated in subsection (c)(4).

(West 2002). The parties assume that the "measure of compensation" contemplated by the statute is the fair market value of the property acquired including the fair market value of improvements to the property, which the appraisers are instructed to report under (c)(1) and (2). We assume without deciding that this is correct.

sources; (2) the *'market data' approach* or value indicated by recent sales of comparable properties in the market, and (3) the *'income-approach,'* or the value which the property's net earning power will support based upon the capitalization of net income.

*State v. Jones*, 173 Ind.App. 243, 251, 363 N.E.2d 1018, 1024 (1977) (emphasis in original) (*quoting State v. Covich*, 260 Cal. App.2d 663, 67 Cal.Rptr. 280, 282 (1968)); *Ramsey*, 439 N.E.2d at 1167. "In the appraisal of real estate, any one or all three of these approaches to estimate the fair market value may be applied." *Annon II, Inc. v. Rill*, 597 N.E.2d 320, 327 (Ind.Ct.App.1992).

The State argues that it was error for the trial court to exclude evidence regarding the cost to move the billboards from the condemned property to an appropriate location on the residue. We agree. The cost to move the billboards was evidence of the cost to reproduce the improvements situated on the condemned property and therefore should have been presented to the jury.[5] Likewise, while capitalization of income is sometimes admissible to establish the fair market value of condemned billboards, for reasons which will be apparent from the discussion below, income capitalization was not relevant to market value given the facts of this case.[6]

■ **Prevailing Rules on Valuation.** Because this Court has not previously addressed the question of the appropriate way to value billboards in an eminent domain case and because we are remanding this case for a new trial on values, we address the question now.

Other jurisdictions have treated billboards the same as other improvements to realty, adhering to the guiding principle that "improvements are compensable to the extent that they enhance the value of the land as a whole." *Eminent Domain: Determination of Just Compensation for Condemnation of Billboards or Other Advertising Signs*, 73 A.L.R.3d 1122, 1125. In surveying the way various jurisdictions value billboards, the A.L.R.'s editors concluded that "in arriving at this 'enhancement' value, virtually every court has appeared to limit its consideration to the evidence of the replacement or reproduction cost of the appropriated sign, less depreciation." *Id.*[7] Evidence of the rental

---

**5.** *State v. Lincoln Memory Gardens, Inc.*, 242 Ind. 206, 177 N.E.2d 655 (1961), which declined to adopt the principle of substitution, does not bar the use of the cost-of-reproduction approach when it is appropriate. That case merely recognizes that where a taking splits a parcel of land that is used for a single purpose by building a highway through it, "restoration of the use of the property as a unified and combined whole is manifestly impossible ... [and the] land taken is irreplaceable by the substitution of other land in a different location." *Id.* at 213, 177 N.E.2d at 658.

**6.** The State correctly argues that because the defendant in an eminent domain proceeding bears the burden of proof and the condemning party's case is in rebuttal to the defendant's case-in-chief, it did not waive this issue when its own expert witness testified regarding the capitalization of income approach at trial. *See VanSickle v. Kokomo Water Works Co.*, 239 Ind. 612, 616, 158 N.E.2d 460 (1959).

**7.** *See, e.g., Rochester Poster Adv. Co. v. State*, 27 Misc.2d 99, 213 N.Y.S.2d 812 (N.Y.Ct.Cl. 1961), *aff'd*, 15 A.D.2d 632, 222 N.Y.S.2d 688 (N.Y.App.Div.1961), *aff'd* 11 N.Y.2d 1036, 230 N.Y.S.2d 30, 183 N.E.2d 911 (N.Y 1962) (holding that company was entitled to be compensated for the signs to the extent that they enhanced the value of the property and that the enhancement value was the fair market value of the signs as determined by their replacement cost); *Division of Admin. v. Allen*, 447 So.2d 1383 (Fla.Dist.Ct.App.1984) (holding that the proper method of valuing signs located on property condemned by the state was the cost of removing the signs or, if not removable, the replacement value less de-

income that the appropriated sign could be expected to produce "has been deemed admissible only where it was shown that the condemnee was unable to relocate a sign within the same market area." *Id.*[8]

When the rental income approach is allowed, it is often subject to limitations. For example, the Arizona Court of Appeals has held that the income approach was permissible subject to two important limitations: (1) the property itself must be income-producing rather than simply producing income from business being conducted thereon, and (2) if the billboards can be relocated in the same market area, the income approach is inappropriate. *Scottsdale v. Eller Outdoor Advertising Co.*, 119 Ariz. 86, 579 P.2d 590, 597–98 (Ariz.App.1978). The New Hampshire Supreme Court has held that the "cost valuation of the signs coupled with the income value of the ground leases awarded all the value that could reasonably be expected to accrue to the [owner]" and "that value is limited here by the brevity of the leaseholds and their uncertain renewal prospects." *State v. 3M Nat'l Advertising Co.*, 139 N.H. 360, 653 A.2d 1092, 1094 (1995).

This approach is consistent with current Indiana eminent domain law.

It has long been the established rule that in determining the value of property taken by condemnation or appropriation the availability and adaptability of property for uses other than that to which it is applied at the time of taking, so far as it may appear from the evidence, may be taken into consideration, but inquiry as to damages cannot go into an intended specific use.

*State v. Tibbles*, 234 Ind. 47, 49, 123 N.E.2d 170, 170 (Ind.1954) (citations omitted). It follows that billboards on condemned property are compensable to the extent that they enhanced the value of the property on the day of the take but not for any "lost income" based on potential future leases.

■ Capitalization of income evidence is allowed only in limited circumstances. "Income from property is an element to be considered in determining the market value of condemned property when the income is derived from the intrinsic nature of the property itself and not from the business conducted on the property." *Jones*, 173 Ind.App. at 252–53, 363 N.E.2d at 1024 (quoting *State v. Williams*, 156 Ind.App. 625, 635, 297 N.E.2d 880, 886 (1973)). *Jones* involved the appropriation of land suitable for quarrying which was part of an ongoing quarrying operation. The court distinguished the facts of that case from those in *Williams*, which involved a restaurant business being conducted on the land, because the quarrying

---

preciation); *State v. Chachere*, 574 So.2d 1306 (La.Ct.App.1991) (holding that trial court properly entered judgment on jury award based on the replacement cost of two signs); *Dept. of Transp. v. El Carlo Motel, Inc.*, 140 Ga.App. 779, 232 S.E.2d 126 (1976) (holding trial court did not err in allowing evidence of the replacement cost of a sign twice as large as the original when the increase in size was necessary for the sign to be legible in its new location).

**8.** *See, e.g., State v. Obie Outdoor Advertising, Inc.*, 9 Wash.App. 943, 516 P.2d 233 (1973) (holding that, given the evidence that the company was unable to relocate the signs, the testimony based on the income method was competent and jury should have been allowed to determine whether the income approach testimony or the reproduction-cost-less-depreciation approach testimony more nearly reflected the fair market value); *Nat'l Adv. Co. v. State*, 116 Nev. 107, 993 P.2d 62 (2000) (failing to consider the income generated by the billboards was error where a county ordinance restricting the replacement of existing billboards made it impossible for the company to erect new billboards in a comparable location).

business "derive[d] its income by processing material which is an intrinsic part of the land." *Id.* at 253, 363 N.E.2d at 1024. Billboards are more akin to a restaurant than a quarrying operation because, like a restaurant, a billboard can be relocated to another appropriate location and continue to produce the same or similar income. Unlike a quarrying operation, its value is not tied to the land itself.

 The income approach is also limited to situations where the property is being operated as a going concern, is in good condition, and is capable of producing the income to be capitalized. *J.J. Newberry Co. v. City of East Chicago,* 441 N.E.2d 39, 42–43 (Ind.Ct.App.1982). We do not mean to say that capitalization of income is never appropriate for determining the fair market value of billboards, but the circumstances will be rare. While it might be appropriate to consider the anticipated income from an existing lease when calculating fair market value, attempting to determine the potential future profits of an unleased billboard is inherently speculative.

Finally, we note that the purpose of these proceedings is to compensate the landowner for the value of what was taken, no less and no more:

> Irrespective of the method adopted for the ascertainment of such value, it is incumbent upon the condemnor to endeavor to reach a result that is truly 'just compensation,' that is, fair to the public as well as to the owner of the property taken. The criteria for determination of compensation and the elements which command consideration have not become unalterably fixed, and consideration must be given to the nature of the property affected and the extent of the interest acquired. 'Value' is a term which is relative in character.

*Jones,* 173 Ind.App. at 250–51, 363 N.E.2d at 1023 (quoting 4 Nichols on Eminent Domain, Third Edition, § 12.1 (citations omitted)). In this case, the Bishops retained the ability to lease billboards on land adjacent to the highway. They are not entitled to "compensation" for something that was not taken.

### Conclusion

We affirm the trial court's refusal to permit the State to withdraw its exceptions. We otherwise reverse the judgment and remand for a new trial.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.